# IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Andrew Floyd; Jonathan Caravello; | ) | |
| City of New Haven; National Abortion | ) | |
| Federation; Common Cause, | ) | |
| *Plaintiffs,* | ) | 1-26-cv-1399 |
| | ) | |
| v. | ) | |
| | ) | |
| Department of Justice; | ) | J. Brinkema |
| Todd Blanche, in his official capacity | ) | |
| as Acting Attorney General; | ) | |
| Stanley Woodward Jr., in his official | ) | |
| capacity as Associate Attorney General; | ) | |
| Scott Bessent, in his official capacity | ) | |
| as Secretary of the Treasury; | ) | |
| Department of the Treasury; | ) | |
| and Anti-Weaponization Fund, | ) | |
| *Defendants.* | | |

### MEMORANDUM IN SUPPORT OF INTERVENOR'S[1]
### MOTION TO JOIN,[2] AND MOTION TO RECONSIDER

---

[1]  In that Federal Rule of Civil Procedure 7.1 requires an Intervenor to file a disclosure statement, the Intervenor certifies that Intervenor is not a publicly held entity, does not have any parent corporation, and is not a trade association. The Intervenor certifies that no publicly held entity has a direct financial interest in the outcome of the litigation, that this case does not arise out of a bankruptcy proceeding, and that this is not a criminal case in which there was an organizational victim.

[2]  Intervenor reserves the right to counter-sue the Plaintiffs.

1

## II. Executive Summary

Intervenor moves to join under Federal Rule of Civil Procedure Rule 19(a)(1)(B)(i) because his "absence will as a practical matter impede the Intervenor's ability to protect his interest." Short- or long-term success of the Plaintiffs, will stall or prevent Intervenor from gaining the relief sought in his May 26th Fund claim – i.e., money and an apology from the reverse racists[4] who mismanaged the Conflict Complaint Division (CCD) and Office of the Assistant Secretary of Civil Rights (OASCR) at USDA during both the Obama Administration and the Biden Administration.

---

[4]    As a staunch advocate for racial justice and equality literally since his childhood from a six-member family with three black members and two-multi-racial members, alleging reverse-racism does not come easily for the Intervenor. But whether in programs or employment, the Obama and Biden Administrations applied one set of standards for blacks and a different set of standards for white, Latinos, and Native Americans.

It is no coincidence that citations related to previous multi-billion-dollar settlement funds cited in the Agreement involve USDA. Long called "The Last Plantation" because of its history of white racism, during the Obama and Biden years, black racists like Joe Leonard, Winona Scott, Candace Glover, and Tina Quarles took over the "Last Plantation" and exacted lawfare revenge. Even the USDA settlement funds cited in the Settlement Agreement were racist and sexist. See, e.g., Elaine Ayala, "USDA Making its Case on Discrimination Claims: Mexican American and Women Farmers Due Controversial Amount, San Antonio News, June 30, 2011; see also generally, https://www.npr.org/2012/02/20/147061447/-can-usda-make-good-with-female-hispanic-farmers (visited June 1, 2026). An ostensibly Latino "coconut" Pfaffle was OASCR's point-person to quell Latino discontents.

3

If the Intervenor's motion to join is granted, he moves, in turn that the Judge reconsider her recent order for the reasons detailed below.

## II. Apparently Federal Cases and Controversies Are Like Open Houses into which Anyone with a Passing Interest Can Stroll

This weekend, I had to laugh at the spectacle of Ret. Judge Shira Scheindlin violating her ethical duty of candor by claiming, on social- and legacy media, that the *Trump v. IRS* suit should have been dismissed due to a lack of standing. According to her, there is no case or controversy where the Executive sues the Executive. In fact, there have been about 180 such suits. See https://adlaw.jotwell.com/when-agencies-sue-each-other/ (visited June 1, 2026); Jonathan Adler, "When One Federal Agency Sues Another in Federal Court," *Reason* (June 20, 2020) (discussing whether "the case belong[s] in federal court" if "the U.S. Postal Service and the Postal Regulatory Commission disagree.")

The cases and controversies and standing doctrines cut both ways. Having misrepresented that an Executive Branch v. Executive Branch suit cannot be litigated, Luttig and Scheindlin knowingly make the false claim to Judge Williams, again in breach of their legal ethical duty of candor that *Kem v. Wilder*, supports their purported standing.

4

> [This] completely misstates the holding of the authority on which it primarily relies. As noted by Steven Duffield, the motion claims that . . . *Kem Manufacturing v. Wilder*, stands for the proposition that nonparties can allege fraud to get settled cases reopened. *It does no such thing.* To begin with *Kem* is distinguishable in that the movant in *Kem* actually did have some privity of interest in the case. There, the parties to the underlying case had reached a settlement that was quite high. Kem, it turned out, was an indemnitor to the liable party. . . . Former judges, of course, have far less notional standing to object than an indemnitor. See Michael Fragoso, "An Extraordinary Circumstance," The National Review (May 28, 2026) at https://www.nationalreview.com/bench-memos/an-extraordinary-circumstance/ (visited June 1, 2026) (emphases added)

If this misrepresentation of a dispositive case precedent – *Kem* - was inadvertent or made by a pro se party, a neophyte attorney, or a harried solo practitioner, it would not warrant sanctions by the courts and bar disciplinary entities. In this instance, 35 retired federal judges tried to deceive Judge Williams about their standing under Kem at the very same time they were pontificate about *others* deceiving Judge Williams![5]

---

[5]    In addition to rereading *Kem*, Ret. Judge Scheindlin may want to reread her journal article on enhanced *Iqbal/Twombley* pleading  see https://www.tourolaw.edu/academics/uploads/pdfs/27_2/2.pdf  (visited June 1, 2026)(citing *Iqbal* for the proposition "that because the assertions were bare, 'the allegations [we]re conclusory.

The inclusion of some of the plaintiffs listed above seems more like something one might encounter in a spoof by **The Onion** than a real case. While I wholeheartedly support the National Abortion Federation (NAF), *at most*, it may be an amicus in this case. Because this is not an abortion or reproductive rights case, NAF standing doesn't pass the Giggle Test. See James McElhaney, "The Giggle Test." *ABA Journal*, pp. 90, 92 (October 1, 1988); James McElhaney, "No Laughing Matter: Failing the Giggle Test Might Leave You Crying," *ABA Journal*, Nov 01, 2011. Similarly, claims of standing by Prof. Jonathan Caravello, the City of New Haven and Common Cause do not pass the Giggle Test. The fact that a bystander has policy concerns or interests does not make for standing.

Even Mr. Floyd is merely a bystander in this case. Imagine the flood of litigation if every *former* federal prosecutor who didn't approve of a civil settlement agreement "arising" in an area of federal law other than the one in which they practiced (Floyd was not an IRS or criminal tax evasion prosecutor) were granted standing to sue and move for declaratory and injunctive relief – notwithstanding the fact that those prosecutors failed to aver any real, concrete harm or injury ripe for federal litigation.

6

Put more legalistically, Intervenor respectfully moves that the Court reconsider whether the "threadbare recitals" of Plaintiffs meet the enhanced pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), see ftn 5 above.

In reconsidering, Judge Brinkema may want consider Intervenor's content analysis of the Complaint. A political theory professor long before law school, Dr, Stephens finds context analysis an interesting exegetical tool. The Plaintiffs' Complaint uses the term "would," as a modal verb (future), "to refer to [the] future"[6] a total of 18 times. But uses the term "standing" just twice (in the same sentence), see Complaint Para. 111.

To Intervenor, this content analysis shows that the Complaint is long on speculation regarding what "would" happen in the future rather than any precise analysis of actual harms forming the basis of standing.

Between now and the Friday June 12th hearing, Intervenor moves the Court to reconsider whether any of the Plaintiffs have standing under Rule 60. And if, upon reconsideration, the Judge rules all lack standing, Intervenor moves that she dismiss both their Motion and their suit.

---

[6]    See   https://dictionary.cambridge.org/us/dictionary/english/would (visited June 1, 2026)

7

## MEMORANDUM OF THE INTEVENOR

### I. Preface

To paraphrase the famous paraphrase of Mark Twain, "Fake News of the demise of the Weaponization Settlement Fund ("Fund") are greatly exaggerated." Although critics of the Fund and legacy- and social-media have been crowing that the President, in essence, TACO-ed on the Fund,[3] the Department of Justice's post on X today states, "The Department of Justice disagrees strongly with the decision on the Anti-Weaponization Fund put forth by the United States District Court Judge in the Eastern District of Virginia . . . [but] will abide by the Court's ruling." See https://x.com/TheJusticeDept/status/2061531380735951193 (visited June 1, 2026), cited in Ryan Lucas, "Justice Department Says it will Abide by Court Order Pausing its 'Anti-weaponization' Fund," *NPR WHYY* (June 1, 2026) https://www.npr.org/2026/06/01/g-s1-125268/justice-department-trump-anti-weaponization-fund-pause (visited June 1, 2026).

---

[3]   As a settlement specialist, the Intervenor questions whether either the President or the IRS, can unilaterally opt out of the Settlement Agreement remains a binding contract. But if, for example, a Court ruled that IRS CEO Frank Bisignano signed the Agreement under undue influence or duress (for example fear of being fired) such a holding would void the Agreement. No such ruling has been made.

## VI. Conclusion

The Intervenor respectfully moves that the Court grant his joinder, reconsider whether the Plaintiff's have standing under Rule 60, *Iqbal* and *Twombley*, find the Plaintiffs' lack standing, and dismiss their Motion and Complaint, while "downgrading" the former Plaintiffs to amici.

Respectfully Submitted,

 /S/  *Glenn Stephens*  6/01/2026
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration, Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com

8

## <u>CERTIFICATE OF SERVICE</u>

On June 1, 2026, the above was mailed to the Court and Plaintiffs.

<u>/S/ *Glenn Stephens* 6/01/2026</u>
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration, Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com

9