IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **Andrew Floyd**, et al., | |
| Plaintiffs, | |
| v. | Case No. **26-cv-1399-LMB** |
| **Department of Justice**, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY**

In their opposition to Plaintiffs' motion for preliminary relief, Defendants represent that the Anti-Weaponization Fund (the "Fund") is "not going forward" and argue that Plaintiffs' case is now moot. ECF No. 62 at 1. Nevertheless, in an interview that aired on Sunday, the President, who is both the head of the executive branch and the lead plaintiff in the litigation that led to the creation of the Fund, told the public, "me, personally, I think the weaponization fund is a great idea, and so do many other Republicans."[1] And Defendants have barely acknowledged or

---

[1] Cheyanne M. Daniels, *Trump continues defense of 'Anti-Weaponization Fund'*, Politico (June 7, 2026),https://perma.cc/KX2A-XN8Q. The President has repeatedly *declined* to confirm that he has abandoned the Fund. On June 3, President Trump said "I'd have to ask the lawyers. I don't know," when asked whether the government had fully abandoned the Fund. Aysha Bagchi, *Legal battle over Trump's $1.8B 'anti-weaponization' fund rages on*, USA Today (June 5, 2026), https://perma.cc/S5NW-3DNH/. In a separate interview the same day, President Trump was asked whether he had dropped the Fund, and he responded "No, a court ruled against it," presumably referring to the May 29 Order in this case, then continued to defend the Fund, saying he was "very proud to have given [people] pardons" and that he "thinks they should be reimbursed for a crooked government." *Donald Trump Unleashed: Bibi, "Are You Effing Crazy?!"* Pod Force One with Miranda Devine and New York Post, 40:34-41:13 (June 3, 2026), https://perma.cc/5TAF-R3MM.

responded to repeated communications from Plaintiffs (1) requesting clarification of public statements made by administration officials, including to Congress, about the administration's plans for Fund or (2) regarding compliance with this Court's order of May 29, 2026, ECF 31 (the "May 29 Order"). *See* ECF 70-1. Nor did Defendants' opposition brief include any substantiation of their claim that the Fund is being discontinued, beyond repeatedly citing unsworn statements made by the Acting Attorney General. *See* ECF 62 at 2, 10, 11, 19-20, 24. Defendants did not offer declarations, official documentation, or otherwise competent evidence supporting the administration's purported plans to halt implementation of the Fund or explaining the interaction between this position and the agreement in the *Trump v. IRS* case (which binds the government to create the Fund). *See* ECF 1-3 at §§ III.C, IV, V, VI.B. Nor did Defendants make any such evidence available in response to Plaintiffs' repeated requests. *See* ECF 70-1. And, in fact, in their most recent correspondence with Plaintiffs' counsel, Defendants have offered even *fewer* assurances about the status of the Fund than they previously offered in their opposition brief, with Associate Attorney General Woodward only making representations as to the lack of various Fund activities as of June 8, and making *no* commitments that the Fund will not be established or operated in the future. *See* ECF 70-1, Att. E. During a meet and confer about this motion, Defendants reiterated that they had no additional support to provide for their position. *See* ECF 70-1, Att. A.

Against that background, it is impossible for Plaintiffs or the Court to credit Defendants' representations that the Fund is "now not going forward," which could simply mean that Defendants are not currently making advancements on the Fund due to this Court's May 29 Order. Given the rapidly approaching hearing on Plaintiffs' motion for preliminary injunctive relief, clarity about the government's claimed dissolution of the Fund is essential and urgent. Limited, expedited discovery into this claim is appropriate given the "unique challenges" faced by "a shape-

shifting opponent," all the more so given the "imbalance of information currently available to the parties." *Shenzhenshibairihongmaoyi-Youxiangongsi v. Novoluto GmbH*, 2026 WL 659167, at *3 (E.D. Va. Mar. 9, 2026). Plaintiffs therefore move for limited expedited discovery to probe Defendants' representations about the Fund, and seek an order (1) permitting them to serve targeted discovery requests, ECF No. 70-2; (2) requiring Defendants to respond to Plaintiffs' discovery requests by Thursday, June 18, 2026; and (3) extending this Court's existing injunction, ECF 31, for two weeks to maintain the status quo while expedited discovery proceeds, and setting a follow-up hearing for June 26.

Plaintiffs previously requested in their letter of June 6, 2026 that Defendants produce competent evidence (including, where appropriate, sworn statements) that clearly demonstrates that Defendants will not establish or operate the Fund, that the May 18, 2026 Order issued by the Acting Attorney General has been rescinded, and that the provisions of the Agreement in *Trump v. IRS* binding the government to establish the Fund are no longer binding on the government. ECF No. 70-1, Att. D. Should Defendants produce such evidence, Plaintiffs would be willing to withdraw this motion.

## LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

District courts have "broad discretion … to supervise discovery." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). "The discovery rules contained in the Federal Rules of Civil Procedure allow courts to adjust the discovery time outlined by Rule 26, and "if warranted, to expedite the time for responding to the discovery sought." *ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11-cv-88, 2011 WL 2560110, at *3 (E.D. Va. June 27, 2011) (quoting *Physicians Interactive v. Lathian Sys., Inc.,* 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003)); Fed. R. Civ. P. 26(d)(1). Indeed, "[m]otions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument." *Id.* at *5 (citations omitted).

"A specific standard for evaluating expedited discovery requests is not set out in the Federal Rules of Civil Procedure[,] nor has [the Fourth Circuit] established such a standard." *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, No. WMN-09-CV-2499, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009); *Smith v. Atlas N. Am.*, LLC, No. 4:23-CV-95, 2023 WL 12196647, at *2 (E.D. Va. Oct. 17, 2023). Courts in this District have at various times applied two different standards. Some have applied a "reasonableness or good-cause standard, taking into account the totality of the circumstances in which the motion is presented." *RelaDyne Reliability Servs. Inc. v. Bronder,* Case No. 2:20-CV-377, 2020 WL 5745801, at *1 (E.D. Va. Aug. 4, 2020) (applying the good-cause standard and authorizing "limited discovery in advance of the hearing on [a pending motion for preliminary injunction]") (quotation and citation omitted). The good cause test

> consider[s] factors such as, '(1) the procedural posture of the case; (2) whether the discovery at issue is narrowly tailored to obtain information that is probative to the preliminary injunction analysis; (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction.

*Kia Motors Am., Inv. v. Greenbrief GMC, Inc.*, 2:20-cv-428, 2020 WL 8970813, at \*2 (E.D. Va. Dec. 11, 2020). Under this approach, a court should be guided by "the procedural posture of the case, the particular expedited discovery requested, and the need to bypass the typical discovery process." *Id.* at \*3.

Others have applied a "modified preliminary injunction test to determine whether expedited discovery is warranted." *Heshan Jiahojia Sanitary Ware Indus., Co. v. Unincorporated Ass'ns Identified in Schedule A*, No. CV 3:25-CV-845, 2025 WL 3006037, at \*3 (E.D. Va. Oct. 27, 2025). That test "looks to whether the Plaintiff has made 'a strong showing of merits and irreparable harm to the Plaintiff' in the absence of expedited discovery and proves justified by 'the idea that granting court relief outside of the federal rules should be limited to unusual circumstances.'" *Id.* at \*3 (quoting *ForceX*, 2011 WL 2560110, at \*5).

**ARGUMENT**

While the Fourth Circuit has not considered whether expedited discovery is governed by a "good cause" or modified preliminary injunction test, discovery is appropriate under either standard here. The good cause standard, while less commonly used in this District, is a particularly apt fit to the remarkable posture of this case and Defendants' exclusive control over potentially dispositive information.

*After* the filing of Plaintiffs' Complaint and motion for preliminary relief, Defendants have attempted to represent that a previously uncontested fact—that Defendants were establishing the Anti-Weaponization Fund—is no longer operative, in their view mooting this case and stripping this Court of jurisdiction. *See* ECF No. 62 at 10-11. The timing of Defendants' assertion, the lack of evidence on which the Court can rely for it, and the inconsistency of the Administration's public position, are all highly unusual circumstances that create a "need to bypass the typical discovery

process" best considered under the more flexible good cause standard more commonly used in other Districts. *Kia Motors*, 2020 WL 8970813, at *2.

The "more demanding" modified preliminary injunction test, which examines, in part, "whether the Plaintiff has made a strong showing of merits," *Heshan*, 2025 WL 3006037, at 3, 3 n.8, also compels discovery here. As set forth in Plaintiffs' motion for a preliminary injunction, they have made such a strong showing on the merits; discovery is only necessary given Defendants' new claim of mootness. Plaintiffs seek targeted discovery to test unsupported representations Defendants have introduced in an attempt to evade judicial review, rather than to develop additional legal or factual support for their already well-supported motion for a preliminary injunction.[2]

The discovery Plaintiffs request here would be warranted under either standard.

**I.      There is good cause to authorize limited expedited discovery into the status of the Fund.**

All four of the good cause factors weigh in favor of granting Plaintiffs expedited discovery.

---

[2] This Court may apply either standard. The modified preliminary injunction standard is neither universally-applied in this district, *see, e.g.*, *RelaDyne,* 2020 WL 5745801, at *1, nor favored in most Districts around the country, including others in the Fourth Circuit. *See ForceX*, 2011 WL 2560110, at *5 (calling the modified preliminary injunction standard "a minority approach"); *see also Guttenberg v. Emery,* 26 F. Supp. 3d 88, 97 (D.D.C. 2014) ("[W]hen a plaintiff requests expedited discovery for the purpose of fleshing out a preliminary injunction motion, 'it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request.'") (quoting *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor,* 194 F.R.D. 618, 624 (N.D.Ill.2000)); *Fuller v. Dixon*, No. 7:21-CV-40-D, 2021 WL 3909659, at *3 (E.D.N.C. Aug. 31, 2021) ("Courts in this district generally have opted to follow the reasonableness inquiry, guided by whether the moving party shows good cause."); *L'Occitane,* 2009 WL 3746690 at *2 ("'a standard based upon reasonableness or good cause, taking into account the totality of the circumstances,' [was] the most appropriate for evaluating [the pending] expedited discovery request.") (citation modified).

*Procedural posture*: "Motions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument." *ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11-CV-88, 2011 WL 2560110, at *5 (E.D. Va. June 27, 2011) (collecting cases). "In the Fourth Circuit, where the circumstances permit, courts have allowed parties to engage in expedited discovery in preparation for a hearing on preliminary injunction." *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) (citing *KBG Holding Corp. v. Union Bank*, 56 F. App'x. 111, 114 (4th Cir. 2003)) (emphasis omitted). A motion for expedited discovery is not reasonably timed if it comes *prior* to a plaintiff's filing of a motion for a preliminary injunction, which would make clear "the areas in which discovery is necessary in advance of a determination of preliminary injunctive relief." *Id.* at 531-32.

Here, Plaintiffs sought a preliminary injunction, and their motion detailed their basis for seeking that relief. ECF 25. However, while their motion was pending, Defendants introduced unsupported and untested allegations, requiring Plaintiffs to seek expedited discovery to ensure a complete and accurate record of the facts related to Plaintiffs' motion may be considered by the Court. Thus, the expedited discovery Plaintiffs seek goes to issues clearly identified in Plaintiffs' preliminary injunction motion, and granting Plaintiffs' request would bolster the factual record before the Court in resolving Plaintiffs' motion for preliminary relief; this factor weighs in favor of Plaintiffs' motion.

*Narrow tailoring:* Plaintiffs' requests are narrowly tailored to the critical question of whether Defendants are establishing the Anti-Weaponization Fund or have actually abandoned it. Plaintiffs propose to propound six narrow requests for the production of documents as well as four

interrogatories, all of which narrowly go to questions at issue in the motion for preliminary relief: namely, whether the Fund has existed, does exist, or will exist. *See* ECF No. 70-2. And it is worth noting that to the extent that Defendants' position—that the Fund does not exist, ECF No. 62 at 3, that no records generated by the fund exist or will exist, *id.*, that no money had been transferred to the fund or Members appointed, *id.* at 9, that no process for adjudicating claims exist and no claims could have been paid, *id.*, and that the Fund will not be implemented, *id.* at 15—is accurate, the burden of many of these requests should be extremely low. *See*, *e.g.*, Pltfs' Proposed RFP 6 (concerning claims received, retained, considered, or processed by the Fund), 7 (concerning transfer of money into and out of the Fund).

Plaintiffs seek *only* information that will test the new factual representations Defendants have made to this Court to argue that this case should be treated as moot, and that Plaintiffs could not be harmed by the Fund at issue in this case. These requests are a far cry from expedited discovery requests that have been deemed overbroad. *See*, *e.g.*, *Smith*, 2023 WL 12196647, at *2 (request for "all documents related to and containing" a patent application was not "tailored to determining the necessary parties to this action"); *see also Dimension Data*, 226 F.R.D. at 532 (request for "a broad range of" defendant's business practices, including before the events that triggered the complaint, was not adequately "focus[ed] on information believed to be probative on the preliminary injunction analysis."). And, of course, this Court may in its discretion narrow any discovery requests it deems overbroad at this stage. *See*, *e.g.*, *Teamworks Innovations, Inc. v. Starbucks Corp.*, 1:19-cv-1240, 2020 WL 406360, at *4, *7 (M.D.N.C. Jan. 24, 2020) (declining to grant "the full measure of expedited discovery proposed by Plaintiff" but granting a subset of narrowed requests).

*Irreparable harm:* Plaintiffs will be irreparably harmed if Defendants' introduction of unsworn and untested evidence successfully results in them evading this Court's jurisdiction or a grant of preliminary relief, and Plaintiffs' expedited discovery is tailored to forestall that possibility. A plaintiff may show harm in connection with a motion for expedited discovery where the information a plaintiff seeks "directly factors into the analysis of the PI Motion that the Court must undertake." *Teamworks Innovations*, 2020 WL 406360, at *5.

For the reasons stated in Plaintiffs' motion for preliminary relief, *see* ECF No. 25 at 27-30, Plaintiffs are irreparably harmed by the establishment of the Anti-Weaponization Fund. Because Defendants' new assertions about the Fund directly factor into the Court's analysis of Plaintiffs' motion for preliminary relief, discovery is warranted to forestall the irreparable harm that would occur if the Court denied Plaintiffs' motion on the basis of an erroneous understanding of the state of the Fund.

*Potential loss of evidence*: Plaintiffs do not "concede[] that the documents or information sought through discovery will be available in the future and are not subject to destruction." *Smith*, 2023 WL 12196647, at *3. On the contrary, Plaintiffs have sought preliminary relief in part to forestall informational injuries flowing from Defendants' failure to commit to proper preservation and publication of records related to the Fund and its activities. *See* ECF No. 25 at 29.

Granting Plaintiffs expedited discovery to establish whether the Fund has operated or will operate is relevant to understanding whether and to what extent the Fund may possess or create records that could be destroyed or kept secret, harming Plaintiffs and prejudicing their ability to litigate this case.

**II.     Expedited discovery is also warranted under the modified preliminary injunction test.**

Expedited discovery is also warranted under the modified preliminary injunction test, given Plaintiffs' likelihood of success on the merits, the likelihood of irreparable harm absent expedited discovery. This conclusion is bolstered by the unusual circumstances of this case, and the relatively minimal burden contemplated by Plaintiffs' requests.

Under the modified preliminary injunction test, a plaintiff must make a "strong showing' of likely success on the merits. *ForceX*, 2011 WL 2560110, at *5. For the reasons discussed at length in Plaintiffs' motion for preliminary relief, Plaintiffs are likely to prevail on the merits of numerous claims, under the First Amendment, Equal Protection Clause, the constitutional separation of powers and Administrative Procedure Act. *See* ECF No. 25 at 12-27.

A plaintiff must also show they would likely suffer irreparable harm in the absence of expedited discovery. *ForceX*, 2011 WL 2560110, at *7. For the reasons discussed in the previous section, and in Plaintiffs' motion for preliminary relief, ECF No. 25 at 27-30, Plaintiffs face irreparable harm from the operation of the Fund. Expedited discovery is necessary to resolve any uncertainty introduced by Defendants' most recent filing as to the actual state and future of the Fund. If the Court were inclined to credit Defendants' representation as to the status of the Fund to rule against Plaintiffs on their pending motion, absent discovery to probe that representation and verify the Fund's status, Plaintiffs risk irreparable harm through its operation.

Beyond those basic elements of the modified preliminary injunction test, courts have considered other factors that weigh in favor of discovery here. Where the other parties' position is in flux, discovery is necessary. *Novoluto*, 2026 WL 659167, at *3 (expedited discovery granted to avoid a party being "forced to litigate high stakes issues at [a preliminary injunction] hearing in the dark.") (quotation omitted);  *Cf., e.g., In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008)

(discovery was warranted to allow plaintiffs to "follow-up [] on facts" the defendant "has itself put in evidence."). Plaintiffs face those same challenges here, where Defendants have introduced new facts, postdating Plaintiffs' complaint and motion for preliminary relief, that are entirely unsupported by competent evidence, and that Defendants claim obviate Plaintiffs' need for relief.

Courts have also considered the burden imposed by expedited discovery requests, rejecting them when they are not "narrowly tailored to obtain relevant information necessary for expedited discovery purposes." *ForceX*, 2011 WL 2560110, at *5 n.3; *see also*, *e.g.*, *Liangsword Ltd. v. Partnerships, Unincorporated Assocs. Identified on Schedule A*, 25-cv-60618, 2024 WL 4486021, at *1 (S.D. Fla. May 14, 2024) ("the narrowly tailored request ensures that the burden on the parties being requested remains reasonable and proportional to the exigencies of the situation."). As discussed above, Plaintiffs' proposed discovery requests are narrowly-tailored to a critical issue for the upcoming preliminary injunction hearing—the status of the Fund. And Defendants' representations about the past, present, and future operation of the Fund suggest many of the requests should be minimally burdensome to comply with.

Finally, the propriety of limited discovery is further supported by the fact that Defendants have exclusive control over the information Plaintiffs seek to obtain, and "[c]ourts place greater weight on the need for discovery 'when the relevant facts are in the control of the opposing party.'" *Bergmann v. Smithsonian* Inst., 2021 WL 1087084 at *3 (D. Md. Mar. 22, 2021) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)).

## III.     Expedited discovery is appropriate even though Plaintiffs assert APA claims.

Courts adjudicating Administrative Procedure Act ("APA") claims typically limit their review to the administrative record rather than a record generated through discovery. *See Truong v. United States Citizenship & Immigr. Servs.*, No. CV 21-316 (RC), 2022 WL 888192, at *2 (D.D.C. Mar. 25, 2022) (explaining that this "record rule . . . . generally prohibits the introduction

of evidence outside the administrative record in APA actions"). But this record rule is irrelevant here, where plaintiffs (1) seek discovery pertaining not to the merits of their claims but to alleged jurisdictional issues introduced by Defendants; and (2) bring not just APA claims but also several constitutional challenges.

First, this presumption against extra-record discovery does not bar discovery unrelated to the merits of a plaintiff's claims, including discovery related to alleged jurisdictional deficits. *See, e.g.*, *Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008) (explaining that "the focal point for judicial review should be the administrative record already in existence" when courts are "applying the arbitrary and capricious standard") (citation and internal quotation marks omitted)). Extending the record rule to discovery into these issues would be incompatible with the purpose of the rule, which is linked to the principle that "a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019). Discovery into the question of whether, as a factual matter, the Defendants in this case have rendered this matter moot based on actions they took that post-date the final agency action at issue, has no bearing on the review of the record that existed at the time of that agency action.

Indeed, whether a plaintiff's claims are unripe, moot, or otherwise ineligible for judicial review is almost never addressed by the administrative record.[3] Barring courts from authorizing discovery pertaining to these issues simply because a plaintiff brings claims under the APA would

---

[3] Courts have recognized that extra-record evidence may be considered when it pertains to issues "generally not raised in the administrative proceedings below." *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017) (explaining that "'it will often be necessary for a court to take new evidence to fully evaluate' claims 'of irreparable harm ... and [claims] that the issuance of the injunction is in the public interest'" (citation omitted) (alterations in original)).

thus render them unable to investigate the contours of their own subject-matter jurisdiction. Such an outcome would be untenable. District courts "have broad discretion to allow jurisdictional discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure." *Sumitomo Chem. Co.*, No. 3:13-CV-00122-MOC, 2013 WL 5636733, at \*4 (W.D.N.C. Oct. 15, 2013) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 2003)); *see also SAS Institute Inc. v. World Programming Ltd.*, 2011 WL 1059139, \*5–\*7 (E.D.N.C. Mar. 18, 2011) (allowing jurisdictional discovery and noting that requests for jurisdictional discovery typically should be granted unless the plaintiff's claim "appears to be clearly frivolous") (citations omitted).[4]

Second, even if this Court were to consider the bar on APA discovery to hold weight with respect to the discovery Plaintiffs seek, the discovery also goes to Plaintiffs' claims arising directly under several clauses of the U.S. Constitution, ECF No. 1 ¶¶ 121–144, and several courts have recognized that extra-record discovery may be appropriate in cases where the plaintiff mounts a constitutional challenge to agency action in addition to bringing APA claims. *See, e.g.*, *Stone v. Trump*, 400 F. Supp. 3d 317, 351 n.26 (D. Md. 2019); *All. for Nat. Health U.S. v. Sebelius*, 714 F. Supp. 2d 48, 59 n.20 (D.D.C. 2010); *Tafas*, 530 F. Supp. 2d at 802; *but see Chiayu Chang v. U.S.*

---

[4] To the extent there is any overlap between Defendants' unsupported jurisdictional allegations and the merits of Plaintiffs' claims, which is not apparent, that too counsels in favor of granting Plaintiffs' proposed discovery requests. "[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Adepoju v. Scales*, 782 F. Supp. 3d 306, 313 (E.D. Va. 2025) (citation omitted) (assessing a Rule 12(b)(1) motion to dismiss challenging the factual basis for subject matter jurisdiction). And "a presumption of truthfulness should attach [Plaintiffs'] allegations" because "[i]n that situation, the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). As such, the district court should "afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id.*

*Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (noting "some disagreement among district courts" on this issue.). That view "accords with the foundational tenet of constitutional adjudication that 'where constitutional rights are in issue,' courts must ensure that "the controlling legal principles [are] applied to the actual facts of the case." *Mayor & City Council of Baltimore*, 429 F. Supp. 3d at 138 (quoting *Pickering v. Bd. of Ed. of Twp. of High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 578 n.2 (1968) (Douglas, J., concurring)). The "welter of cases" discussing application of the record rule in cases where Plaintiffs bring both APA and constitutional claims "underlines the need for a flexible approach, tailored to the facts and claims of the case." *Id.* (citations omitted) (finding that the APA did not preclude discovery on the plaintiff's constitutional challenge based "on the particulars of this case"). Here, that counsels in favor of granting Plaintiffs' request for expedited, targeted, and narrowly tailored discovery into the credibility of Defendants' assertions that the Fund is "not going forward," ECF No. 62 at 1.

Finally, of course, it is *Defendants* who are seeking to introduce extra-record evidence in the first instance—Acting Attorney General Blanche's unsworn and untested statements to Congress. Plaintiffs' discovery requests are only necessary to the extent that this Court credits the extra-record evidence proffered by Defendants about a supposed change in the agency's position.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court authorize prompt and limited discovery into the status of the Fund, and modify this Court's injunction to allow expedited discovery to be completed to aid resolution of Plaintiffs' motion for preliminary relief.

Dated: June 9, 2026

Respectfully submitted,

*/s/ Joel McElvain*
Joel McElvain (Va. Bar No. 95215)
Pooja A. Boisture*
Jyoti Jasrasaria*
Aman George*
Ayesha Khan*
Robin F. Thurston*
Skye L. Perryman*
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jmcelvain@democracyforward.org
pboisture@democracyforward.org
jjasrasaria@democracyforward.org
ageorge@democracyforward.org
akhan@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*

*admitted *pro hac vice*