IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Citizens for Responsibility          )
and Ethics in Washington,            ) Civil Action
                                     ) No. 26-cv-1789
              Plaintiff,             )
                                     ) MOTION HEARING
vs.                                  )
                                     ) Washington, DC
U.S. Department of Justice,          ) June 10, 2026
et al.,                              ) Time:  4:10 p.m.
                                     )
              Defendants.            )
_____

TRANSCRIPT OF MOTION HEARING
HELD BEFORE
THE HONORABLE JUDGE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE
_____

A P P E A R A N C E S

For Plaintiff:      Nikhel Sus
                    Stephen J. Buckingham
                    Stuart McPhail
                    Keyvan Farchadi
                    CITIZENS FOR RESPONSIBILITY AND ETHICS
                      IN WASHINGTON
                    PO Box 14596
                    Washington, DC 20044
                    202-408-5565
                    Email:  Nsus@citizensforethics.org
                    Email:  Sbuckingham@citizensforethics.org
                    Email:  Smcphail@citizensforethics.org
                    Email:  Kfarchadi@citizensforethics.org

For Defendants:     Andrew Block
                    U.S. DEPARTMENT OF JUSTICE
                    950 Pennsylvania Ave SE
                    Washington, DC 20530
                    202-372-7565
                    Email:  Andrew.block@usdoj.gov

Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                        Official Court Reporter
                        Janice_e_dickman@dcd.uscourts.gov
                        202-354-3267

 *   *   *   *   *   *   *P R O C E E D I N G S*   *   *   *   *   *   *

THE COURTROOM DEPUTY:  Your Honor, we're on the record in civil case 26-1789, Citizens for Responsibility and Ethics in Washington versus U.S. Department of justice, et al.

Starting with plaintiff's counsel, please approach the podium and state your appearance for the record.

MR. SUS:  Good afternoon, Your Honor.  Nikhel Sus for plaintiff, Citizens for Responsibility and Ethics in Washington.  With me at counsel table is Keyvon Farchadi, Steve Buckingham, and Stuart McPhail, also from CREW.

THE COURT:  Welcome.

MR. BLOCK:  Good afternoon, Your Honor.  Andrew Block, representing the United States defendants.

THE COURT:  Where are you from?

MR. BLOCK:  Department of Justice, sir.

THE COURT:  Where?

MR. BLOCK:  The Office of the Associate Attorney General.

THE COURT:  Thank you.

We're here for the TRO hearing in this case.  It's been briefed ad nauseam.  We'll hear from the moving party.  You have ten minutes.

MR. SUS:  Yes, Your Honor.  Our Constitution vests in Congress, not the Executive Branch, the power to create and fund federal agencies.  The defendants in this case have defied

that bedrock principle by illegally creating, with no statutory authorization, a powerful new Executive Branch agency with final, unreviewable authority to dole out nearly $1.8 billion in taxpayer funds to anyone they deem to be a victim of so-called lawfare or weaponization.

To make matters worse, Your Honor, the defendants have deliberately structured this new entity to operate with maximum secrecy, unlawfully insulating it from mandatory public disclosure requirements under the Judgment Fund statute and the FOIA.  In opposing the plaintiff's motion for preliminary relief, the government mainly argues that this case is now moot because of the acting attorney general's June 2nd statements to Congress that the administration is, quote, not moving forward with the fund.

But the government has come nowhere close to carrying its heavy burden to show that it is absolutely clear that the challenged conduct will not recur.  So this case is not moot and the threat of irreparable harm to CREW remains.  And there are three reasons for that, Your Honor.

The first is that the fund's charter documents remain in full force and effect and the Acting Attorney General's June 2nd statements were not a legally valid recision of those charter documents.  And we know that from the plain terms of the documents.  The May 18th agreement and the accompanying Attorney General order that was issued on the same date are a

single integrated document under the plain terms of the settlement agreement.  Any modification to that legal instrument must be made in writing by all parties to the *Trump versus IRS* litigation in the Southern District of Florida.

The defendants have provided no evidence that there has been a written modification by all parties in that lawsuit to the May 18th settlement agreement.  Without that proof, without that written modification, the terms of the fund's charter documents remain in full force and the Acting Attorney General's statements at a hearing were not a legally valid recision.

On top of that, Your Honor, the day after the Acting Attorney General's testimony on June 2nd, the President gave an interview where he directly contradicted the Acting Attorney General.  When asked if he had dropped the anti-weaponization fund, he said no.  And then after that he proceeded to say that the potential beneficiaries of this fund deserve to be compensated for a crooked government.

Those words carry immense significance, Your Honor, for two reasons.  First of all, the President, of course, is the Chief Executive.  The President is issuing an executive order that states this administration's policy is that the President exercises supervision and control over every Executive Branch employee.  Of course, that would include the Acting Attorney General and the defendants in this case.

The second reason why it's significant is that the President is also the lead plaintiff in *Trump versus IRS*. And under the terms of the agreement as just described, he has the power to withhold or agree to modification of the May 18th agreement. And, so, regardless of what the Acting Attorney General said on June 2nd, all indications are that the administration and the President are not in alignment with him and that the fund has not been abandoned.

Finally, Your Honor --

THE COURT: What specific relief are you seeking, over and above the representation by the Acting Attorney General that this will not proceed? What are you seeking?

MR. SUS: So, Your Honor, we have conferred extensively with the government. If they would be willing to agree to either a consent order or a stipulation that is functionally similar to the proposed order for this motion, we would happily withdraw our motion. And so if they were to agree that the fund will not operate, the fund will not dispense any payments, that the fund will not go forward --

THE COURT: So, if they withdrew the May 18th order?

MR. SUS: Certainly if they withdrew the May 18th agreement, which includes both the agreement and the order, which is incorporated by reference in it, yes. If they withdraw the order, that would resolve the issue.

THE COURT: You've discussed this with them?

MR. SUS:  Yes.  So, Your Honor, we've had extensive confers with the government in an attempt to try to avoid having to raise this with the Court.  What we were told is that the Acting Attorney General's statements to Congress on June 2nd resolved the matter definitively, mooted the matter definitively, and that they were not going to provides us any other assurances that we had requested.

We had several outstanding requests, as outlined in our briefing.  The government did not provide any of them, including refusing to confirm that they view this fund as an entity that is covered by the Federal Records Act and covered by FOIA, which is, obviously, directly relevant to our standing and our injury that we are alleging here.  But also, just basic commitments about is the fund going to operate?

We raised these same concerns that I have just outlined about -- on paper the fund is still a legally operative entity.  Nothing has changed.  And, so, we were concerned about the fund dispensing money, especially after the TRO in the Eastern District of Virginia matter expires.

THE COURT:  That wasn't a TRO.

MR. SUS:  Yes, Your Honor.

THE COURT:  They seem to have a power in the Eastern District of Virginia that we don't have in the District of Columbia, it's called administrative stay.  Our circuit court has administrative stays, the District of Columbia, but not our

district court judges.  So Judge Brinkema must have gotten some kind of power somewhere from the Fourth Circuit to grant administrative stay.  She did not rule on the TRO, is my understanding.

MR. SUS:  So that's correct, Your Honor.  I'm not sure that the judge called it an administrative stay.  I agree with you that --

THE COURT:  I think she did call it.

MR. SUS:  She did call it.  Okay.  Well, I stand corrected.  I will say that that order, her order will expire as soon as Friday, so two days from now.  And after that order expires, there is absolutely no legal impediment to them going full bore, the defendants going full bore on the fund, to appoint members, to adjudicate claims, to send out money.

THE COURT:  Well, representations have been made in court, in court documents, subject to the Federal Rules of Civil Procedure.  And if misrepresentations have been made to the Court, the Court can sanction that kind of behavior, as you well know.

MR. SUS:  So, Your Honor, just to be clear, I'm not saying that the government is misrepresenting the position, what I'm saying is that the President is the superior officer --

THE COURT:  He might be doing what he's doing for political benefit to himself, but that's different than what's

going on in the courts and in the pleadings and in the statement of the Acting Attorney General in front of the Senate.  There is a distinction between the two. Theoretically, at least.

MR. SUS:  Respectfully, I would disagree with that, Your Honor, and that's because --

THE COURT:  Tell me why you disagree.

MR. SUS:  As the President and both as the lead plaintiff in the *Trump versus IRS* lawsuit, I do think the Court has to accord the President's words with great weight in this context and we cannot --

THE COURT:  We always give the President's words great weight.

MR. SUS:  Yes.  Well, and it is also -- just to be clear, it is not just the President's words, it is also the fact that this agreement remains in full force and effect. Legally it has not been rescinded in any way.  So the President's words certainly add additional reason to be very concerned that this fund will remain operational and could, as soon as that temporary order -- we'll call it the administrative stay in the Eastern District of Virginia case -- as soon as that expires, again, no legal impediment to the fund resuming operations.

And, so, again, Your Honor, we've talked to the government about this.  If the fund is not going forward,

theoretically the government should be able to agree to a stipulation or a consent order or some sort of formal document whereby they commit to not going forward with the fund, but they are unwilling to do that.

And pointing to the acting attorney general's testimony, I just want to be clear, he -- even his testimony was equivocal.  When asked if he would put in writing the recision of the fund's charter documents, he repeatedly refused requests from members of Congress to formally rescind the May 18th agreement in writing.  He refused to memorialize that recision, which, as Your Honor knows, when an agency rescinds -- when an agency rescinds a written directive, typically it does it in writing.  And so that alone is highly unusual, that he refused to do that, refused repeated requests to issue a written recision.

THE COURT:  This whole case is highly unusual, to say the least.

MR. SUS:  I would agree with that, yes.

But in addition to that, he confirmed at the hearing that the May 18th agreement remains in effect.  He called it the settlement agreement.  He said that that remains in effect, but somehow they're not going forward with the fund.  And so, Your Honor, that doesn't really make a lot of sense because, as we discussed, the May 18th agreement and the incorporated order of the Attorney General are a single document, they're in a

single integrated document.  So how could it be the case that the May 18th settlement agreement is still in place, if he has -- if the fund is not going forward?

THE COURT:  You got a minute.

MR. SUS:  Yes.

THE COURT:  One minute.

MR. SUS:  Yes.  And so, Your Honor, because of all this, the case is not moot.  The government has presented no competent evidence to demonstrate that the case is moot.  The government has put in no affidavits, no declarations, and so the showing of irreparable harm that we have demonstrated remains in place.  It is the same as when we -- before we filed the motion.  The only difference is that we now have quick-approaching deadlines.

We have the June 12th date by which the administrative stay in the Eastern District of Virginia could expire.  We also have, per the terms of the still-operative legal documents, a June 17th date by which fund members are supposed to be appointed.  We also have a July 17th date by which the effectuation of transfer of funds from the Treasury to the designated account for the anti-weaponization fund is supposed to take place.

And so we've outlined four types of irreparable harm in our papers:  The irreparable loss of federal records, the irreparable loss of access to time-sensitive information, the

irreparable loss of notice and comment opportunities before these actions happen, rather than after they happen, and then the irreparable First Amendment harms as well.

Each of these harms are still on the table, regardless of what the acting attorney general said on June 2nd. And if the government could commit to some of these things in writing, again, we would be prepared to withdraw our motion. But we are forced to come to the Court and seek relief because the government cannot make these basic assurances in writing in a way that ensures that we will not suffer irreparable harm here.

Your Honor, very briefly in closing, I did want to reiterate that we --

THE COURT: I thought that was your closing.

MR. SUS: All right. Well --

THE COURT: You can have 15 seconds.

MR. SUS: 15 seconds. Well, Your Honor, I just want to reiterate, we have a Rule 65(a)(2) request, if Your Honor deems it appropriate at this stage to convert to summary judgment for some of the claims that we have moved on. But that's outlined in our papers. And, otherwise, we will rest on the papers.

THE COURT: Thank you.

MR. SUS: Thank you, Your Honor.

THE COURT: Mr. Block.

MR. BLOCK:  May it please the Court.

THE COURT:  You got the short straw.

MR. BLOCK:  May it please the Court, Andrew Block on behalf of the United States defendants.

The Court should deny the plaintiff's motion for preliminary relief because the plaintiff cannot meet its burden --

THE COURT:  This isn't a PI hearing.  This is a TRO hearing.

MR. BLOCK:  Well, they have moved for a TRO and a Section 705 motion to stay and preliminary injunction.

THE COURT:  That's why today's hearing is on the TRO only.

MR. BLOCK:  Okay.  It's still on the plaintiffs to show the irreparable harm that they would face.  It's still their burden to show the harm that's -- that would come to them, and to prove their standing, right?  They have to show the likelihood of success on the merits, the imminent harm, and all the other factors.  And our point is that they can't do that because, as a threshold matter, they can't show standing, that the case is unripe and, of course, it's moot.

And mootness, of course -- and plaintiff's counsel spent a lot of time talking about mootness.  That is, of course, just one of the independent grounds that they would have to overcome.

THE COURT:  Let's start with mootness then.

MR. BLOCK:  Okay.

THE COURT:  Why isn't it?

MR. BLOCK:  Why is it not moot?  Because the standard for mootness is evasion capable of -- or, capable of evading review.  And that's -- it's not that it might recur, as plaintiff's counsel said, it's that this voluntary cessation is for the purpose of evading review.  And as Your Honor kind of seized on, it's -- to the extent that there was a voluntary cessation, right? the fund was announced and then the Acting Attorney General said it's not going forward.

Myself, the Associate Attorney General, have put in our papers, as you noted, that it's not going forward, representations in writing to this Court.  And it's not because it's for evading review.  I mean, if that were the case and the case were dismissed and then the Department of Justice changed its mind, then that starts to look like repetition capable of evading review.  But one time is not evading review, that's just a decision to move another direction and, therefore, the case is moot.

THE COURT:  Was his testimony under oath in the Senate?

MR. BLOCK:  I'm not sure, but I don't think that it really matters.  It's an official statement to the United States Congress.  As Your Honor is likely aware, I

mean --

THE COURT:  It matters in terms of his exposure.

MR. BLOCK:  I think -- how do you mean?

THE COURT:  Well, if you testify under oath and you make a misrepresentation, a lie, it's one exposure.  If you're not under oath, it's a different exposure.

MR. BLOCK:  Well, I mean, certainly any statement to Congress is an official statement, Your Honor.  And there's statutes that govern that.  And every witness before Congress, you know, signs the -- you know, signs their affidavit and the truth in testimony form and things like that.  I don't know that the Attorney General did it in -- the Acting Attorney General did that in this exact instance, I just -- I know that that's Congress's standard procedure.

There's -- I mean, the assumption, the idea that, you know, he was just outright lying to Congress is not the basis for standing, for them to come in and say, oh, well, no, we assume that he was lying to Congress, therefore, it's not moot.

THE COURT:  Why doesn't he rescind the May 18th order?

MR. BLOCK:  You know, I don't know the answer to that question, Your Honor.

THE COURT:  Is there a reason for that?

MR. BLOCK:  I don't know the reason for that.  All I know is that both the Acting Attorney General and the Associate

Attorney General have stated in, you know, official statements that the fund is not moving forward.  And -- but, again, mootness is just one of the factors here, Your Honor.  And ripeness and standing are more fatal to the plaintiffs here and I would like to move on to those.

THE COURT:  Let's talk about standing.

MR. BLOCK:  Okay.  So, with respect to standing, of course the plaintiffs must show that they have injury that is caused and redressable for each claim that they bring.  Now, the plaintiffs try to lump together various causes of action and theories of standing and check the box for -- you know, for each different claim.  But when you sort them out, Claim 1 through Claim 8, each one of those has a fatal flaw on either harm, causation, or redressability.

For instance, the plaintiff's counsel mentioned their FOIA -- for instance, their FOIA injuries.  Well, they submitted a FOIA request and we put into the docket that that FOIA request was granted expedited processing.  There is no FOIA injury.  They're on the normal track under FOIA to get all the documents that they're entitled to under that process.  And FOIA, regardless, is not any sort of remedy.  There's no vacatur or declaratory judgment or, kind of, some of the other reliefs that plaintiffs were listing available under FOIA.

So you can't bootstrap FOIA to an APA argument and say, therefore, we want vacatur.  That's not how it works.

Each claim has to stand on its own weight, and they don't do that.  They try and, kind of, put them together and have a lot of their other claims and theories and reliefs ride on a different theory of standing.

And, really, the most -- the most fatal to the plaintiffs here is ripeness.  This case is simply not ripe for judicial review.  There are far too many what-ifs to properly frame the case or controversy for this Court.  In *Texas versus United States* the Supreme Court said that a claim is not ripe if it rests upon the contingent future actions that may not occur as expected or, indeed, may not occur at all.

In the last ten minutes in plaintiff's time that's all we talked about, was what may or may not occur.  And all of these what-ifs are insufficient to establish standing or ripeness.  The fact of the matter is, no members have been appointed to the fund, no processes have been adopted, no claims have been submitted, no theory of adjudication or evaluation has been adopted, no money has been transferred, and certainly no money has been sent out to any sort of claimants.

THE COURT:  That's what the order addresses, the timetable.

MR. BLOCK:  Right.  The order that is no longer going forward, yes.

THE COURT:  Why not rescind it?

MR. BLOCK:  I -- I don't know.  I mean, if -- are you

talking about the May 18th order or the settlement agreement?

THE COURT:  The May 18th order.  That was done by the Acting Attorney General.

MR. BLOCK:  Your Honor, I don't know.  I mean, I just -- all I know is that the Acting Attorney General has said, and the Associate has also said in these papers that the fund is not moving forward.

THE COURT:  How do you reconcile the difference between the Acting Attorney General's statements on June 2nd and the President's remarks on June 3rd?  How do you reconcile them?

MR. BLOCK:  I think they're -- I think they're consistent.  I mean, I think in the Acting Attorney General's testimony to Congress, he even said, he said he recognized that this is an important issue.  It can be an important issue and also still not moving forward in this -- you know, with this fund, right?  The issue can remain important.  There's a lot of things that are important to a lot of people, but they don't for whatever -- one reason or another aren't able to act on. And so -- so just to say that there's people out there who suffered at the hands of weaponized government, or that I would like to find a solution, or that they deserve compensation, that isn't a direction to move forward with the fund that the Attorney General said he's not moving forward with.

And, in fact, in the statement where he said we're

not moving forward with it, he caveat -- he didn't caveat it, he added to it that he recognized it was important to the President. And so -- but, nevertheless, the fund was still not moving forward.

THE COURT: You have a minute.

MR. BLOCK: One minute. Okay. And I would just say, to the extent that any of these are not, you know, dispositive, I suppose, in our favor -- you now, we haven't gotten to some of the other things, but we did brief -- there is no final agency action here. The settlement is not the final agency action as defined. Under 5 U.S.C. 551(13), there's six very specific types of actions that constitute a final agency action.

There's no First Amendment harm, nobody is censoring CREW's speech, they're free to criticize this. But their theory of First Amendment harm is to basically compel the government to speak in a particular way that they can then continue to speak on. The cases they cite are like -- are regulatory speech cases, right? The Vermont -- the *Sorrell* case, for instance, Vermont passed a law that directly regulated speech. It's inapposite here.

And so -- then I just wanted to touch on all of the mentions of assurances in writing. I think Your Honor is exactly correct that our brief, our assurances in writing, you know, my name is on it, the Acting Attorney General's name is

on it -- I'm sorry, not the acting, the Associate Attorney General's name's on it, and those are submissions, they're court documents.  And why not, you know, some other side agreement?  Because it's the department's position that we don't need to do that when there's not a live or justiciable controversy.

So in conclusion, each of the plaintiff's arguments fail to align an alleged injury with the right claim and right remedy to give it standing to seek this extraordinary form of relief at this early stage that they are seeking.  These claims have not ripened and they are simultaneously already moot.  For these reasons and those reasons stated in our papers, we ask the Court to deny the motion.  Thank you.

THE COURT:  In light of the parties' briefing and arguments presented today, I will deny plaintiff's motion for TRO on the grounds that the plaintiff has not demonstrated a likelihood of establishing subject matter jurisdiction, as the case appears to be moot.  A plaintiff seeking emergency relief must show a likelihood of success not only on the merits, but also on establishing this Court's jurisdiction.

Federal courts lack jurisdiction over claims that are moot.  And mootness must be assessed at all stages of the litigation to ensure that a live controversy remains.  On the present record I'm not persuaded that such a live controversy exists.  The government has represented, both in its filings

and through statements by the Acting Attorney General before Congress, that the challenged fund is, quote, is not moving forward, close quote, and, indeed, quote, will not, close quote, move forward.

I'm entitled to credit the government's affirmative representations, particularly when they have been orally repeated in court hearings, stated in formal court filings, and announced by senior officials.  I'm expressly relying on these representations to deny the TRO today.

I plan to rule on the plaintiff's request for a preliminary injunction soon.  I give the Justice Department, however, a fair warning:  Don't play possum with this Court.

We stand adjourned.

\* \* \*

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, JANICE DICKMAN, do hereby certify that the above

and foregoing constitutes a true and accurate transcript of

my stenographic notes and is a full, true and complete

transcript of the proceedings to the best of my ability.

                Dated this 11th day of June, 2026




                        _____

                        Janice E. Dickman, CRR, CMR, CCR
                        Official Court Reporter
                        Room 6523
                        333 Constitution Avenue, N.W.
                        Washington, D.C.  20001