IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDREW FLOYD, et al.,                    )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 )          1:26-cv-1399 (LMB/IDD)
                                         )
DEPARTMENT OF JUSTICE, et al.,           )
                                         )
            Defendants.                  )

<u>ORDER</u>

On June 12, 2026, defendants were offered the opportunity to end this litigation by filing written declarations under the penalty of perjury affirming what they have represented to the public, the House Appropriations Subcommittee on Commerce, Justice, Science and Related Agencies ("House Subcommittee"), our judicial colleagues in the United States District Court for the District of Columbia, and this Court—namely, that they will not take any action to create or operate the Anti-Weaponization Fund ("Fund") and that the Fund will not proceed in any manner or under any other name. Instead of filing those declarations, defendants have filed a Notice declining to provide such assurances under the penalty of perjury, claiming that "[s]uch declarations are unnecessary and the compelled testimony of senior officials from the Executive Branch implicates serious separation of powers concerns." [Dkt. No. 93] at 2.

Defendants point to Acting Attorney General Todd Blanche's testimony before the House Subcommittee (a copy of which is attached to their Notice) in which he stated that the Fund is "not going forward, period," <u>id.</u>, and to statements their counsel have made in briefs and in open court that "the Fund is not going forward," <u>id.</u> They argue that "[a]ll these statements were made against the backdrop of serious penalties of falsity," citing to 18 U.S.C. § 1001 and Fed. R. Civ.

P. 11(b)-(c).  Neither § 1001 nor Rule 11 provides the "serious penalties of falsity" that defendants describe.  Although § 1001(a) makes it a felony carrying up to five years of imprisonment for knowingly and willfully making a materially false, fictitious, or fraudulent statement or representation in a matter within the jurisdiction of the executive, legislative, or judicial branch, subsection (b) exempts statements made by a party or their counsel to a judge in a judicial proceeding.  This "judicial function exception" was "developed out of a concern that § 1001 might be interpreted to 'criminalize conduct that fell well within the bounds of responsible advocacy.'" United States v. Manning, 526 F.3d 611, 615 (10th Cir. 2008) (cleaned up) (quoting Julie R. O'Sullivan, The Federal Criminal "Code" Is a Disgrace: Obstruction Statutes as Case Study, 96 J. CRIM. L. & CRIMINOLOGY 643, 709 (2006)).

Rule 11 also fails to provide "serious penalties for falsity."  A sanction for making a misrepresentation to a court in violation of Rule 11(b) is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Fed. R. Civ. P. 11(c)(2), and, at its most severe, could involve the referral of the offending lawyer to the appropriate state bar for disciplinary action.  Rule 11's other, lesser forms of sanctions include the imposition of fines, striking of pleadings, and issuance of public reprimands.  None of these sanctions creates the "backdrop of serious penalties of falsity" that defendants claim.

To the extent defendants argue that Article III prohibits the kind of assurance the Court seeks, the Notice grossly overstates what the Court has required before this civil action can be deemed moot.  Defendants cite numerous cases in which subpoenas for the deposition or in-court testimony of high-ranking government officials were quashed.  At this time, those cases are inapposite to this civil action as defendants have neither been required to sit for depositions (although they may now become subject to that process during discovery proceedings) nor to

testify in court; rather, they were simply offered the option to provide a short, written declaration under the penalty of perjury. Such a declaration would have sufficient evidentiary weight to render this litigation moot.

That the defendants have refused to accord a genuine degree of trustworthiness to their representations about the Fund not going forward is particularly concerning because of the President's consistent support for the Fund and Acting Attorney General Blanche's acknowledgement that the Fund remains "important." Specifically, during his testimony before the House Subcommittee, in response to a question about plans for the Fund after this Court's June 12 restraining order deadline passed, Mr. Blanche, who was not under oath, stated:

> So, thank you. So, look, we're not moving forward with the fund. You're right that there's a date that in the case in the Eastern District of Virginia in June, but we are not moving forward with the fund, period. Um, we -- we, the reasons for the fund is something that President Trump talked about for a long time, which is the fact that there were a lot of people in this country who had their government weaponized against them.
>
> The reasons for the fund, I think, were -- were -- it remains as important as they were before, but we are not moving forward with the fund.

[Dkt. No. 93-1] at 17.

Although Acting Attorney General Blanche reiterated several times during his testimony that the Fund was not going forward, when asked whether he would "issue a new memo in writing rescinding that May 18 memo," he replied, "I'm not committing to putting anything in writing. And I said it over and over again." [Dkt. No. 93-1] at 70; see also id. at 71.

As the Court explained during the June 12 hearing, a civil suit does not necessarily become moot when the defendants agree to stop the conduct at issue in the litigation. Under the voluntary cessation exception to the mootness doctrine, "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." City

News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001).  Moreover, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) (citing United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)).

An example of conduct found insufficient to satisfy this high burden includes a defendant's "reluctant decision" to change a policy because such reluctance suggests "a desire to return to the old ways."  See Porter v. Clarke, 852 F.3d 358, 365 (4th Cir. 2017) (quoting Citizen Center v. Gessler, 770 F.3d 900, 908 (10th Cir. 2014)).  On the record before this Court, the President and Acting Attorney General Blanche's continued interest in compensating alleged victims of alleged government weaponization, the defendants' unwillingness to provide declarations under the penalty of perjury, and Acting Attorney General Blanche's refusal to rescind the May 18, 2026 memo, which set up the structure of the Fund, all support the conclusion that this civil action is not moot.

For these reasons, a Scheduling Order starting the standard civil discovery process was issued on June 22, 2026, and it is hereby

ORDERED that defendants' answer or other responsive pleading be filed by Friday, July 17, 2026.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 24th day of June, 2026.

Alexandria, Virginia

_____ /s/ 

Leonic M. Brinkema
United States District Judge

4