**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Andrew Floyd et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 1:26-cv-1399-LMB |
| v. | ) | |
| | ) | |
| Department of Justice, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMO IN SUPPORT OF DEFENDANTS' MOTION TO VACATE INITIAL
SCHEDULING ORDER AND STAY DISCOVERY**

Defendants, through their undersigned counsel, hereby respectfully move this Court to

vacate the initial scheduling order (Dkt. 95) that it issued in the above-captioned action on June

22, 2026, or otherwise stay discovery.  The grounds for this motion are as follows:

**Procedural Background**

1.      In the instant action, Plaintiffs bring various challenges to the Anti-Weaponization

Fund. The Court has issued a Preliminary Injunction enjoining Defendants from:

> "taking any action to create or operate the Anti-Weaponization Fund, including but
> not limited to transferring or causing to be transferred any money to the Anti-
> Weaponization Fund; processing any claim submitted to the Anti-Weaponization
> Fund; making any payment out of the Anti-Weaponization Fund; appointing any
> member to manage the Anti-Weaponization Fund; establishing any rules or
> procedures governing the Anti-Weaponization Fund; destroying any documents
> relating to the Anti-Weaponization Fund, its creation, its procedures, or claims
> submitted to the Anti-Weaponization Fund; reconstituting the Anti-Weaponization
> Fund under a different name; or taking any actions under the purported authority of
> the Anti-Weaponization Fund;"

Dkt. 85 at 1–2.

2.      On June 22, 2026, the Court issued its standard scheduling order (Dkt. 95).

3.     On July 15, 2026, the Acting Attorney General testified, under oath that "There is no weaponization fund. The weaponization fund is dead, it's not moving forward … There's no modification. It never started. No money went from the Treasury to any other account. There's no commissioners. It's not moving forward." Senate Judiciary Committee, Nomination Hearing of the Honorable Tood Blanche to be Attorney General of the United States ("Nomination Hearing"), at 1:26:42–:27:22.

4.     On July 17, 2026, Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim (Dkts. 104–105). As most pertinent here, the memorandum in support of that motion argued:

a.     The Court lacks subject matter jurisdiction over all claims because this case is not ripe, given the exceedingly premature nature of Plaintiffs' attacks on the Anti-Weaponization Fund, which has not even been started (and will not be, see below), let alone been constituted, set rules of procedure, or processed any claims;

b.     The Court lacks subject matter jurisdiction over all claims because this case is moot, given the assurances—now repeatedly made under oath and in writing by the Acting Attorney General of the United States—that the Fund is not moving forward;

c.     The Court lacks subject matter jurisdiction over all claims because Plaintiffs lack standing, given that their suit is premised on thinly disguised taxpayer standing, which is insufficient to confer Article III standing.

d.     There is no "final agency action" for the Court to review.

5.     On July 31, 2026, Plaintiffs filed their memorandum in opposition to the motion to dismiss, primarily arguing that the under-oath statements did not moot the case. Dkt. 120.

6.      Then on August 2, 2026, the Acting Attorney General issued another Order providing that "The Attorney General's May 18, 2026 Order establishing the Anti-Weaponization Fund ("Fund") is rescinded and shall have no force or effect." Order, Acting Attorney General Blanche, Aug. 2, 2026 ("Rescinding Order").

7.      While all of this was happening, discovery also began. Dkt. 95, 114.

8.      Plaintiffs propounded "First Set of Discovery Requests" on July 7, 2026.

9.      This First Set of discovery included five Requests for Admission, six Interrogatories, and seven Requests for Production. Defendants provided answers and objections to this First Set on August 6, 2026.

10.     At the Initial Pretrial Conference, held on July 22, 2026, the parties disagreed on how much discovery was necessary, and the Court determined each party would be entitled to 18 Interrogatories, 20 Requests for Admission, and 20 Requests for Production. This would be in addition to the Administrative Record, which is currently set to be produced on August 17, 2026.

11.     On August 6, 2026, Plaintiffs filed their First Amended Complaint, as of right, adding nearly 20 additional pages of new pleading, a new plaintiff, and a new free-standing constitutional claim. Dkt. 123. The First Amended Complaint also added several new paragraphs to the prayer for relief on what the Plaintiffs call the "Immunity Order." (See Dkt. 1-3, 123-2).

12.     The same day the Court issued an order requiring defendants to "ADVISE the Court by close of business on Friday, August 7, 2026 whether they plan to proceed with their original Motion to Dismiss or whether they prefer to file an amended motion or other responsive pleading." Dkt. 128.

13.     The Defendants have since advised that they will file an amended motion to dismiss which will raise the same threshold jurisdictional issues. Dkt. 131.

**Basis for Stay of Discovery**

14.     Pursuant to Rule 16(b)(4) a Court may modify a scheduling order for good cause shown. And of course, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *accord Pille v. Kiely*, 1:24-cv-47, 2024 WL 5708191 (E.D. Va. Oct. 2024) (Brinkema, J.).

15.     Defendants anticipate filing an amended motion to dismiss challenging the justiciability of this case by August 20, 2026, allowing the dispositive motion to be heard as early as September 11, 2026.

16.     Despite the Plaintiffs knowing of the "Immunity Order" when they filed the lawsuit—it was attached to the original complaint (see Dkt. 1-3)—the Plaintiffs have only now raised it as an independent basis of standing and harm.

17.     While this is their right, it is a new and novel case theory that should be tested through the ordinary course of civil procedure.

18.     Notably, this case theory was not raised, or briefed, at the preliminary relief stage. Yet it is a novel theory that federal employees have a free-standing, self-executing constitutional claim against the government they work to raise policy agreements they disagree with.

19.     Because this Court has issued its standard scheduling order, because Plaintiffs have already propounded a First Set of discovery, and because Plaintiffs have represented to the Court at the Pre-trial conference their intent to issue additional rounds of discovery requests, Defendants reasonably anticipate that Plaintiffs will seek to propound more discovery requests while dispositive motions are pending, including on their new case theory which is, as of now, untested.

4

20. Additionally, Plaintiffs have been preparing to produce an Administrative Record on August 17, 2026—in just ten days—based on Plaintiffs' first case theory. Importantly, though, the motion to dismiss was scheduled to be heard *before* the Administrative Record was set to be produced.

21. A stay of discovery now would allow the Defendants to (1) have their dispositive motion heard to see if the new claim, or any claim, survives; and (2) evaluate what facts may be in dispute with respect to any remaining claims.

22. Absent a stay of discovery, Defendants will be prejudiced by having to engage in wide-ranging and intrusive discovery implicating several privileges all ahead of a dispositive motion—which raises mootness ripeness, and standing issues—being resolved. This would effectively invert the normal course.

23. Plaintiffs will not be prejudiced by a stay of discovery because, under the normal course, they are not entitled to discovery ahead of responsive pleadings. *Tafas v. Dudas*, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) ("even where plaintiffs have asserted constitutional claims, 'wide-ranging discovery is not blindly authorized at a stage in which an administrative record is being reviewed.'").

24. Defendants understand and acknowledge that the Court assessed justiciability at the preliminary injunction stage and ordered discovery open at that time.

25. Since that time, however, there have been significant factual updates (as briefed previously and will be briefed again) and a new complaint with a new and novel case theory.

26. Because Defendants will file an amended motion to dismiss on numerous weighty jurisdictional issues, the Court should consider and resolve those dispositive jurisdictional motions before permitting discovery to re-commence. "Without jurisdiction the court cannot proceed at all

in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). Accordingly, "the district court must have jurisdiction . . . before the discovery rules become operative." *Al Fayed v. CIA*, 229 F.3d 272, 276 (D.C. Cir. 2000).

27.     That is especially true here because Plaintiffs' discovery implicates numerous privileges. Their already-served discovery requests show they are seeking internal discussions and documents that are clearly protected by attorney-client privilege, attorney-work product and deliberative-process privilege (among others). For example, Plaintiffs have sought:

     a.     "Any and all documents and/or communications revealing a lawful authority to create the Fund."

     b.     "Any and all documents and/or communications … concerning the Agreement or any of its provisions, including about the Agreement's conception, creation, consummation, modifications, and status."

     c.     "Any and all documents and/or communications—including between the government and the plaintiffs in the *Trump v. IRS* case—concerning the conception, creation, operation, status, or plans for the Anti-Weaponization Fund, including about the eligibility criteria for awards from the Fund."

     d.     "Identify any and all communications between the government and the plaintiffs in the *Trump v. IRS* case that created, modified, or abandoned the Agreement."

28.     Courts have long recognized that matters of privilege can "appropriately be deferred." *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968). This Court has likewise stayed discovery or vacated initial scheduling orders where federal defendants raised jurisdictional and privilege issues, including where plaintiffs sought discovery from agency attorneys, as Plaintiffs here do. *E.g.*, *Elhady v. Piehota*, No. 1:16-cv-375, ECF No. 21 (vacating initial scheduling order where federal defendants raised jurisdictional and privilege arguments); *Webster v. Mattis*, No. 1:17-cv-1384, ECF No. 56 (staying discovery where federal defendants raised jurisdictional and attorney-client privilege arguments after plaintiffs sought discovery from agency attorneys).

29.     Instead of forcing discovery and privilege disputes in the abstract and while a dispositive motion is pending, Plaintiffs seek a brief stay of discovery to put the civil action back on the ordinary course of litigation.

30.     Plaintiffs will suffer no harm from vacating the initial scheduling order or otherwise staying discovery. The Anti-Weaponization is not operational and will not be. There is no reasonable prospect it would be restarted, let alone cause some sort of imminent harm to Plaintiffs. In the event that this Court ultimately concludes that it may exercise jurisdiction over Plaintiffs' claims, this Court can easily re-issue an initial scheduling order at that time.

31.     With respect to the Administrative Record, the Defendants seek a modest extension of the deadline to ensure that the Amended Complaint does not raise new issues or actions which require an amendment to the Administrative Record Defendants have been compiling.

32.     Additionally, Defendants are prejudiced by having to produce an Administrative Record where, as here, they contend as a matter of law that no final agency action exists, and where there is no live, justiciable matter for the Court to review.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully ask that the Court vacate, or otherwise modify its Scheduling Order to 1) postpone the required production of the Administrative Record until 30 days after the ruling on the Motion to Dismiss; 2) stay all discovery until a resolution of the forthcoming amended motion to dismiss.


Dated: August 7, 2026                    Respectfully Submitted,

                                         STANLEY E. WOODWARD
                                         ASSOCIATE ATTORNEY GENERAL

                                           /s/    Andrew J. Block
                                         ANDREW J. BLOCK
                                         Senior Counsel to the Associate Attorney General
                                         950 Pennsylvania Ave. NW
                                         Washington D.C. 20530
                                         Andrew.Block@usdoj.gov
                                         (202) 372-7565

                                         *Counsel for Defendants*

8

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

/s/ *Andrew J. Block*
Andrew Block