**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**Andrew Floyd**, et al.,

Plaintiffs,

v.

**Department of Justice**, et al.,

Defendants.

**Case No. 26-cv-1399-LMB**

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
INITIAL DISCLOSURES AND DISCOVERY RESPONSES**

Pursuant to Federal Rules of Civil Procedure 7 and 37, and Local Rules 7 and 37, Plaintiffs request that this Court compel Defendants to comply with their discovery obligations and produce initial disclosures and adequate responses to Plaintiffs' First Requests for Production of Documents dated July 7, 2026 ("RFPs") and Plaintiffs' First Set of Interrogatories dated July 7, 2026 ("Interrogatories").[1]

[1] Pursuant to Local Civil Rules 7(E) and 37(E) and this Court's Order (Dkt. No. 114, ¶ 10(b)), Plaintiffs' counsel certifies that the Parties have met and conferred via both email and videoconference, including a 1.25-hour videoconference on July 29, a 1-hour videoconference on August 17, and a short follow-up videoconference on August 20, to attempt to resolve the discovery disputes addressed in this Motion without the need for Court intervention. Despite Plaintiffs' good-faith efforts to resolve and narrow these disputes, the Parties remain at an impasse, necessitating this Motion.

## INTRODUCTION

The District Court Judge has twice made clear that Defendants must engage in the discovery process in this case, *see* Order (Dkt. No. 95); Order (Dkt. No. 140), but Defendants flagrantly refuse to comply with even the most basic of discovery obligations. Plaintiffs, on the other hand, have diligently pursued discovery, both through timely issued discovery requests and multiple follow-up communications with Defendants' counsel. After weeks of misleading and evasive answers, it has become evident that Defendants have no intention of fulfilling their discovery obligations. Plaintiffs therefore file this motion.

The Court should issue an order compelling Defendants to produce these long overdue materials and responses on an expedited basis.

## FACTUAL BACKGROUND

This action concerns Defendants' creation of a $1.776 billion slush fund to benefit President Trump's friends and cronies (the Anti-Weaponization Fund) and an immunity deal for President Trump, his family, his businesses, and unknown affiliates (the Immunity Order) in violation of, *inter alia*, the Constitution. Dkt. Nos. 1, 123. On June 22, 2026, Judge Brinkema entered an order commencing discovery. Dkt. No. 95. This Court then entered a subsequent order setting discovery deadlines. Dkt. No. 114. Defendants have actively defied this Court's order and refused to comply with their discovery obligations in a multitude of ways.

*First*, in direct violation of this Court's order and despite repeated agreements in court documents to do so, Defendants have refused to provide Plaintiffs with initial disclosures. The Parties held a Rule 26(f) conference on June 30, 2026. Dkt. No. 100. At no point during the Rule 26(f) conference did Defendants state that initial disclosures are not appropriate in this action. The Parties drafted and filed a joint proposed discovery plan in which both Parties agreed to exchange

initial disclosures on July 24, 2026. Dkt. No. 100 ¶ 2. Defendants did not state any objection to initial disclosures in the original joint proposed discovery plan. Dkt. No. 113 ¶ 2. This Court then held a Rule 16(b) conference, at which Defendants were expressly asked about initial disclosures. Defendants never stated before the Court that they objected to providing initial disclosures. After the Rule 16(b) conference, the Parties filed a revised joint proposed discovery plan in which again both Parties agreed—and Defendants did not object—to exchange initial disclosures on July 24, 2026. Dkt. No. 113 ¶ 2. Ultimately, the Court incorporated the Parties' revised joint proposed discovery plan into its Rule 16(b) Scheduling Order and explicitly ordered that it could not be modified except by the Court. Dkt. No. 114 ¶ 5.

Despite this clear requirement to exchange initial disclosures—and despite never stating any objection to providing initial disclosures during the Rule 26(f) conference, in either the original or the revised joint proposed discovery plan, or before this Court in the Rule 16(b) conference—on the July 24 due date, Defendants provided no initial disclosures. Plaintiffs followed up by email on July 27, at which point Defendants stated for the first time that they would not provide initial disclosures because they believed they were exempt from the disclosure requirement. Ex. 1 (correspondence regarding initial disclosures). Plaintiffs responded that they disagreed with Defendants' position. *Id.* The Parties met and conferred via video conference on July 29 to attempt to resolve the issue, but Defendants stated that their position remained the same. Ex. 2 at 2 (correspondence regarding July 29 meet and confer). Defendants followed up by email two days after the meet and confer to confirm: "Defendants' position has not changed. We believe the Administrative Record will fulfill our Rule 26 obligations." Ex. 1.

*Second*, Defendants have refused to adequately respond to discovery requests. On July 7, 2026, Plaintiffs served six interrogatories, five requests for admission, and seven requests for

production. Ex. 5 (RFPs); Ex. 6 (Interrogatories); Ex. 7 (Plaintiffs' First Requests for Admission ("RFAs")). Any objections Defendants had to these requests, including any objections to their scope, were required to be served in writing on or before July 22. Local Civ. R. 26(C). Defendants did not serve any objections to any of Plaintiffs' discovery requests by that date. Instead, on July 24, Defendants' counsel contacted Plaintiffs' counsel and asked Plaintiffs' counsel to "waive" Defendants' failure to timely object to the requests. Ex. 3 (correspondence regarding objections deadline). Plaintiffs' counsel declined, explaining that what Defendants sought was a stipulation of an extension of time to serve objections, which is expressly not allowed under either the Local Rules or this Court's Rule 16(b) Scheduling Order. *See* Local Civ. R. 26(C) (requiring objections be served within 15 days "[u]nless otherwise ordered by the Court"); Local Civ. R. 37(F) ("Any agreement between counsel relating to any extension of time is of no force or effect; only the Court . . . may grant leave for any extension of time"); Dkt. No. 114 ¶ 4 ("Any modifications to this Order . . . require the parties to seek leave of Court pursuant to Fed. R. Civ. P. 16(b)."). Defendants served untimely objections on July 24. Ex. 8 (Objections to RFPs); Ex. 9 (Objections to Interrogatories); Ex. 10 (Objections to RFAs). And despite asking for Plaintiffs' position on a motion for a retroactive two-day extension, Defendants did not move this Court for any extension of their objections deadline. Ex. 3. Moreover, the objections that Defendants served were general boilerplate objections, copied and pasted from one request to the next without specifying even whether any information would be withheld pursuant to the objections as required by Federal Rule of Civil Procedure 26. Exs. 8-10.

Despite Defendants' failure to timely object, Plaintiffs' counsel still complied with its obligations to meet and confer regarding the discovery requests and did so via a 1.25-hour videoconference on July 29. In that conference, Defendants again requested that Plaintiffs agree

to retroactively extend their deadline to object to discovery requests, and Plaintiffs again refused, explaining this Court's rules and practice are clear that no such agreement to extension—without moving the Court—is allowed. Ex. 2 at 3.

The Parties also discussed the overall scope of the requests, given that Defendants had indiscriminately objected to Plaintiffs' requests by stating they were overbroad because the entire Department of Justice and the entire Treasury Department, combined, have 190,000 employees. Ex. 2 at 3; Exs. 8-10. Plaintiffs made clear that their requests were targeted to those individuals making decisions regarding the conception, creation, and implementation of the Anti-Weaponization Fund. Ex. 2 at 1, 3. Defendants asserted that Plaintiffs must identify specific custodians or offices for Defendants to search in order for the requests to not be overbroad. *Id*. at 3-5. Plaintiffs explained that without even initial disclosures, Plaintiffs are unable to do so in the first instance, but would meet and confer to discuss any limitations Defendants proposed. *Id*. at 1, 3. Defendants adamantly refused to propose any such limitations, insisting Plaintiffs alone must identify any limitations. *Id*. at 3-5. The Parties also discussed specific requests for which Defendants sought clarification or limitation, but because Defendants asserted they had no authority to agree to any compromise, the Parties came to no agreement. Ex. 2 at 2-4.

On August 6, Defendants served their responses to Plaintiffs' requests. Ex. 11 (Responses to RFPs); Ex. 12 (Responses to Interrogatories); Ex. 13 (Responses to RFAs). Their responses to Plaintiffs' RFPs and Interrogatories were severely deficient. As to the RFPs, Defendants did not produce a single document, did not certify as to whether they had conducted any search or withheld any documents, and instead simply "maintain[ed] their objections" or provided nonresponsive narrative statements. Ex. 11. As to the Interrogatories, Defendants provided unsigned, nonresponsive, and incomplete answers or simply "decline[d]" to answer altogether. Ex. 12.

On August 11, after taking two business days to review Defendants' responses, Plaintiffs' counsel emailed Defendants' counsel to seek clarification of whether any documents or privilege log were forthcoming, given that Defendants' counsel had represented during their July 29 meet and confer that Defendants would produce documents and discovery responses by August 6. Ex. 2 at 4; Ex. 4 at 11 (correspondence regarding Defendants' responses). Defendants' counsel did not provide a response to Plaintiffs' questions and refused to schedule a meet and confer by Friday, August 14, citing a status conference in a different matter on Thursday, August 13, and discovery obligations and meetings related to both this matter and others. Ex. 4 at 5-10. Defendants' deadline to produce a privilege log, which the Parties agreed to in their original and revised joint proposed discovery plan, Dkt. Nos. 100 ¶ 8(a), 113 ¶ 8(a), was August 13. Plaintiffs did not receive a privilege log on that date (or thereafter). Ex. 4 at 4.

Notwithstanding Defendants' delay, Plaintiffs' counsel complied with their obligations and met and conferred with Defendants' counsel about Defendants' non-existent and insufficient responses to Plaintiffs' discovery requests in a 1-hour videoconference on Monday, August 17. In that conference, Plaintiffs confirmed that Defendants did not intend to move for a retroactive extension of their objections deadline or withdraw any of their general boilerplate objections. *Id.* at 2. With respect to Defendants' responses to the RFPs, Plaintiffs confirmed that Defendants had not conducted any searches for responsive documents and that they were not claiming privilege over any documents via a privilege log. *Id.* at 4. The Parties acknowledged that they had reached an impasse on RFPs 1, 2, 3, and 7, and Defendants agreed to provide amended responses to the RFPs stating their positions more definitively by Wednesday. *Id.* at 2-3. With respect to their responses to the Interrogatories, Defendants stated that they would take Plaintiffs' concerns back

to his clients and provide any amended responses that they were able to by Wednesday. *Id.* at 3-4. The Parties agreed to meet and confer again on Thursday, August 20 if needed. *Id.* at 4.

Defendants served amended responses to the RFPs and Interrogatories on August 19. Ex. 14 (Amended Responses to RFPs); Ex. 15 (Amended Responses to Interrogatories); Ex. 16 (correspondence regarding Defendants' amended responses). As to the RFPs, Defendants simply made more specific statements that they are not producing any documents. Ex. 14 at 8, 10, 12, 14, 16, 19-20. As to the Interrogatories, Defendants amended their responses to Interrogatories 1, 2, and 3 to add references to the rescission of the Blanche Order, *see* Dkts. 123-3, 123-5, but continued to refuse to respond to Interrogatory 3 to identify any individuals as requested. Ex. 15 at 6, 8, 9-10. Nor did they address their insufficient responses to Interrogatories 4, 5, and 6. *Compare* Ex. 15 at 11, 13, 14-15 *with* Ex. 12 at 11, 13, 14.

## STANDARD OF REVIEW

Under Rule 37, when "a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure . . . ." Fed. R. Civ. P. 37(a)(3)(A); *see also* Local Civ. R. 37(A) ("After a discovery request is objected to, or not complied with, within time, and if not otherwise resolved, it is the responsibility of the party initiating discovery to place the matter before the Court by a proper motion pursuant to Fed. R. Civ. P. 37, to compel an answer, production, designation, or inspection."). Additionally, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## ARGUMENT

### I. This Court should compel Defendants to serve initial disclosures.

The Court should compel Defendants to comply with their obligations under Federal Rule of Civil Procedure 26(a)(1) and this Court's Order to serve Plaintiffs with initial disclosures. The Rule for initial disclosures could not be more clear:

> A party **<u>must</u>** make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects **<u>during the conference</u>** that initial disclosures are not appropriate in this action **<u>and states the objection in the proposed discovery plan</u>**.

Fed. R. Civ. 26(a)(1)(C) (emphasis added).

As set forth on pages 2-3, *supra*, Defendants not only failed to timely object to the production of initial disclosures in either the Rule 26(f) conference or in the joint proposed discovery plans, but instead explicitly agreed twice in filings before this Court to serve them on July 24. Dkt. No. 100 ¶ 2; Dkt. No. 113 ¶ 2. Indeed, Defendants never stated any objection to initial disclosures until after they were due, and then only because Plaintiffs emailed to inquire as to where they were. Ex. 1. Moreover, when Plaintiffs attempted to meet and confer with Defendants via videoconference, Defendants maintained their position that they would not comply even with this most basic discovery obligation. Ex. 2 at 2. Because Defendants failed to object to the production of initial disclosures at any relevant time, they waived any such objection. On this basis alone, they should be compelled to comply with this requirement.

Moreover, Defendants' sole basis for refusing to provide initial disclosures is the fact that some of the claims Plaintiffs have brought are reviewable on an administrative record. Ex. 1; Ex. 2 at 2. Even if Defendants had timely asserted this objection (and they did not), it would have been unavailing. Notably, Judge Brinkema ordered discovery to commence in this case after hearing argument on Plaintiffs' motion for a preliminary injunction and fully considering the scope of

Plaintiffs' claims. *See* Dkt. No. 95. She was thus fully aware of the fact that only some of Plaintiffs' claims were subject to review on an administrative record and determined that discovery should commence. *Id*. And although Defendants filed a very belated motion to stay discovery in this case, *see* Dkt. No. 133, Judge Brinkema denied that motion, too, explicitly stating that "ongoing discovery" in this matter "is appropriate," *see* Dkt. No. 140. Thus, Judge Brinkema has already determined that this case is governed by Rule 26—including the mandatory initial disclosures required under Rule 26(a)(1)—and Defendants should be compelled to comply with their obligations under that Rule.

## II. The Court should compel Defendants to search for and produce documents responsive to Plaintiffs' requests for production 1, 2, 3, and 7, with all non-privilege objections deemed waived, and compel a privilege log of any withheld documents.

Defendants have failed to produce—or even search for—a single document in response to Plaintiffs' RFPs. Instead, Defendants merely responded to RFPs 1, 2, 3, and 7 by stating they "stand on their objections," Ex. 14 at 8, 10, 12, 19-20, and told Plaintiffs' counsel that they had not conducted any search, Ex. 4 at 4.[2] But Defendants waived all of their objections in at least three ways: (1) by failing to timely assert any objections or move even *nunc pro tunc* for an extension; (2) by asserting only impermissible general objections when serving their objections after their deadline; and (3) by failing to produce a privilege log asserting any privilege over any document. Defendants should therefore be ordered to do exactly what the Federal Rules and this Courts' orders commencing discovery require: to search for and produce all non-privileged

[2] With respect to RFPs 4 and 5, Defendants did not "stand on their objections" but instead provided non-responsive narrative statements and conclusory statements that no responsive documents exist, without conducting any search or inquiry. Ex. 14 at 14, 16; Ex. 16 at 2. As to RFP 6, Defendants responded "to the extent any such non-privileged documents exist, they have been produced in the Administrate Record." Ex. 14 at 17. Defendants did not identify any specific documents, however. *Id.* Although these responses are facially deficient, Plaintiffs are not moving to compel documents responsive to these requests at this time.

documents responsive to Plaintiffs' requests, and to log any documents withheld in full or in part based on privilege.

First, Defendants waived all objections by failing to timely object to any of Plaintiffs' requests. *See, e.g.*, *Montoya v. Daisy Fresh Cleaning Co., Inc.*, No. 1:19-cv-1264, 2020 WL 6930513, at *1-2 (E.D. Va. 2020) (compelling production of documents "without objection" where party missed the 15-day deadline under Local Civil Rule 26(C) because "[a] party's failure to submit timely objections to discovery requests may constitute a waiver of any objection."); *Certain Underwriters at Lloyds, Lond. v. Advanfort Co.*, No. 1:18-cv-1421, 2019 WL 3366103, at *5 (E.D. Va. July 25, 2019) (ruling that defendant waived all its objections as untimely made); *Galloway v. Martorello*, No. 3:19-cv-314, 2023 WL 5229231, at *12 (E.D. Va. Aug. 14, 2023) ("Local Civil Rule 26(C) requires discovery objections be 'served within fifteen (15) days after the service of the interrogatories, request, or application.' Defendants' objections were not timely. They are overruled for that reason alone.").

Plaintiffs served their requests on July 7, 2026, thus making Defendants' objections due July 22. Ex. 5; Local Civ. R. 26(C). Defendants did not serve any objections on July 22, although they later served untimely objections and asked Plaintiffs to consent *nunc pro tunc* to extend their time to object. *See* Ex. 3. Plaintiffs declined, explaining that such a stipulation of extension is expressly against the Local Rules and this Court's practice. *See* Local Civ. R. 37(F) ("Any agreement between counsel relating to any extension of time is of no force or effect; only the Court after appropriate motion directed thereto, may grant leave for any extension of time."). Plaintiffs' counsel twice told Defendants' counsel that, pursuant to the Local Rules, any extension of time to serve objections could only be accomplished through a motion to the Court. Ex. 3; Ex. 2 at 3. But Defendants instead have expressly told Plaintiffs they will not move for any such extension. Ex. 4

at 2. In any event, it is now far too late; they have waived such objections and should be ordered to comply with Plaintiffs' requests in full. *Galloway*, 2023 WL 5229231, at *12.

Second, even if this Court were to consider Defendants' untimely objections (and it should not), all of those objections should be rejected as impermissibly "boiler plate" and "general," as set forth in this Court's Rule 16(b) Scheduling Order. Dkt. No. 114 ¶ 3 ("No 'general objection' may be asserted in response to any discovery demand except to preserve the attorney-client privilege and work product protection."); *see also Galloway*, 2023 WL 5229231, at *13 ("The Defendants also presented boiler plate General Objections. Those are impermissible. Thus, they are overruled." (citing *Spendlove v. RapidCourt, LLC*, No. 3:18-cv-856, 2019 WL 7143664, at *3 (E.D. Va. Dec. 23, 2019) (overruling and striking "common specific objections" as "general objections")).

Defendants' untimely objections to Plaintiffs' RFPs include almost exclusively "boiler plate" or "general" objections. Defendants merely copied and pasted the same objections below each individual discovery request without sufficient specificity to overcome this Court's preclusion of general objections. Ex. 14 at 5-12, 18-19. At the outset, several objections to each request consist of nothing more than Defendants' complaining about and disagreeing with the propriety of serving objections on an earlier deadline than their responses are due. *See* Ex. 14 at 5, 8, 10, 18 (repeating the same three statements in objections to each request that Defendants "reserve" a purported "right" to assert additional objections later in discovery).

Additionally, Defendants object to every single request on the basis of Defendants' disagreement that Plaintiffs are entitled to discovery at all—despite the fact that the District Court Judge has twice ordered that discovery must proceed in this matter and thus already implicitly overruled all of these objections. *See* Dkt. No. 95, 140. *See* Ex. 14 at 6, 8-9, 11, 18-19 (repeating

verbatim objection to each request that because some of Plaintiffs' multiple claims are "under the Administrative Procedure Act and an Administrative Record will be forthcoming," that "document discovery is unwarranted at any stage [of this proceeding] and is—to the extent it becomes warranted at any point—premature at this time" because an administrative record was forthcoming). Moreover, although Defendants served the administrative record on August 17, no documents in that record appear to be responsive to RFPs 1, 2, 3, or 7, and Defendants' amended responses do not identify any documents in the administrative record that they claim are responsive to those requests. Fed. R. Civ. P. 34(b)(2)(E)(i); *see* Ex 14 at 8, 10, 12, 19-20.

Indeed, Defendants' objections are so rote that they frequently bear no discernible relation to the actual request. For example, Defendants object to virtually every single request on the basis of law enforcement privilege and/or the disclosure of sensitive law enforcement techniques, despite the fact that none of the requests have any discernible bearing on any law enforcement investigation. *See* Ex. 14 at 7, 9, 12. And Defendants have failed to produce a privilege log asserting that or any other privilege over any document. Ex. 4 at 4.

Similarly, Defendants repeat verbatim an objection to each request that "[t]he Request is ambiguous as it is written in the passive voice and does not reasonably describe the documents it purports to seek." Ex. 14 at 7, 9, 12, 19. But this objection has no meaning; none of the requests are in passive voice, and Plaintiffs specifically explained any parts of the requests over which Defendants expressed confusion when they met and conferred. Ex. 2 at 3-4. Each request fully describes the documents for which Defendants must search.

Defendants also repeatedly object to any request mentioning the Settlement Agreement in *Trump v. IRS* as "improperly seek[ing] confidential attorney communications and correspondence protected by Fed. R. Evid. 408." Ex. 14 at 7, 9-10, 12, 19. But Federal Rule of Evidence 408 is a

limitation only on what evidence may be admitted at trial to show the validity or amount of the claim settled by the agreement, and it expressly authorizes admissibility at trial for any other purpose. Fed. R. Evid. 408; *see also Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, (4th Cir. 1987) ("Fed. R. Evid. 408 . . . generally forbids testimony regarding compromises or offers to compromise[] need not prevent a litigant from offering such evidence when he does not seek to show the validity or invalidity of the compromised claim"); *Phillips v. Ottey*, No. 14-cv-0980, 2016 WL 6582647, at *3 n.6 (D. Md. Nov. 7, 2016) ("the Fourth Circuit does not recognize a settlement privilege"). More importantly, Rule 408 applies only as to admissibility at trial; "even if Rule 408 would operate to bar admission [of requested documents] into evidence, it does not prohibit their disclosure in discovery." *Blankenship v. Brooks Run Mining Co. LLC*, No. 2:14-CV-26268, 2017 WL 1319825, *3 (S.D.W. Va. 2017) ("while Rule 408 may apply to [the requested documents] for the purposes of their admissibility [at trial], it is irrelevant at this point [in a motion to compel] as evidence need not be admissible to be discoverable"); *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, No. 1:20-CV-442, 2020 WL 6947921, at *2 (M.D.N.C. Sept. 29, 2020) ("District courts in the Fourth Circuit have consistently declined to recognize a settlement privilege, based on the policy underlying Rule 408 or otherwise, in discovery disputes.") (citing cases).

Critically, Plaintiffs do not intend to introduce any evidence regarding the Settlement Agreement to establish that the claims asserted in *Trump v. IRS* were valid; indeed, the judge presiding over that matter has already concluded they were not. *Trump v. IRS*, No. 1:26-cv-20609, 2026 WL 2015525, at *8-17 (S.D. Fla. July 13, 2026). Moreover, Defendants themselves have expressly stated that the Settlement Agreement defines critical terms in both the Anti-Weaponization Fund and Immunity Order at issue in this litigation, *see* Dkt. Nos. 123-2 (Immunity

Order), 123-3 (Funding Order), so it is not simply "a matter before another court," as Defendants repeatedly object. *See* Ex. 14 at 7, 9-10, 12, 19.

As another judge on this Court has explained, boiler plate or general objections are improper because "(1) they reach so broadly that the requesting party cannot determine what is being answered or responded to and what is not" and "(2) the generality obscures what the general objection is foreclosing from discovery," which "precludes meaningful negotiation in the meet and confer process" and "allows the producing party a degree of control over the discovery process not intended by the federal discovery rules." *Spendlove*, 2019 WL 7143664, at *3. That is exactly what occurred here.

Indeed, Defendants' objections merely underscore their blatant refusal to meet and confer in good faith as part of the discovery process. For example, Defendants repeatedly object to requests by vaguely asserting that the requests could not possibly be proportional because they were propounded on Defendants, the Departments of Justice and Treasury, which combined have "some 190,000 total employees . . . ." Ex. 14 at 6, 9, 11. But during the Parties' first meet and confer, Plaintiffs explained that the appropriate and most natural reading of the requests was and should be limited to those individuals or offices within the departments involved in "the conception, creation, and implementation of the Fund," not every employee of every component of a Department. Ex. 2 at 1, 3-5. Yet Defendants refused to agree to this limitation, insisting Plaintiffs must name specific custodians—despite Defendants refusing to even produce initial disclosures that might identify potential custodians, and refusing to identify any individuals to whom the requests could potentially be narrowed. *Id*. Defendants then responded to the discovery requests by stating they "maintain their objections" because (where Defendants provided any reason at all) Plaintiffs did not limit the scope of the request. Ex. 11 at 8, 11, 13. And even after

meeting and conferring again, Defendants refused to work with Plaintiffs to craft a reasonable search and instead served amended responses confirming that they "stand on their objections" for the same reasons (where provided). Ex. 14 at 8, 10, 12.

Because Defendants refuse to engage in the discovery process in good faith, the Court should compel them to search for and produce all non-privileged documents responsive to Plaintiffs' RFPs 1, 2, 3, and 7, with all non-privilege objections deemed waived, and to produce a log of all documents withheld or partially withheld on the basis of privilege that adequately describes the privilege(s) claimed.

## III. The Court should compel Defendants to provide complete answers to Plaintiffs' interrogatories 3, 4, 5, and 6, with all objections deemed waived.

Defendants have likewise failed to provide adequate responses to Plaintiffs' Interrogatories. First, Defendants make their responses "subject to, and without waiving any of the objections stated above," Ex. 15 at 6, 8, 9, 11, 14, but they waived all of their objections by both failing to timely assert any objections and asserting impermissible general objections. Furthermore, their responses to Interrogatories 3, 4, 5, and 6 are woefully incomplete.

First, for the same reasons that Defendants waived their objections to Plaintiffs' RFPs, they also waived their objections to Plaintiffs' Interrogatories. *See supra* at 10-11. Plaintiffs served their Interrogatories on July 7, 2026, thus making Defendants' objections due July 22. Ex. 6; Local Civ. R. 26(C). Defendants did not serve any objections on July 22. Although they later served untimely objections and asked Plaintiffs to consent *nunc pro tunc* to extend their time to object, *see* Ex. 3, such a stipulation of extension is expressly against the Local Rules and this Court's practice, and Defendants have not moved for an extension of time to serve their objections. As such, they have waived any such objections and should be ordered to respond to Plaintiffs' Interrogatories in full.

Second, even if this Court were to consider Defendants' untimely objections (and it should not), those objections should be rejected as impermissibly "boiler plate" and "general." *See supra* at 11-14. Defendants' untimely objections to Plaintiffs' Interrogatories include almost exclusively "boiler plate" or "general" objections that are copied and pasted across Interrogatories, regardless of whether they bear any relation to the actual request.

As with the RFPs, several objections to each interrogatory consist of complaints about the propriety of serving objections on an earlier deadline than their responses are due. *See* Ex. 15 at 8, 10, 12, 14 (repeating the same three statements in objections to each request that Defendants "reserve" a purported "right" to assert additional objections later in discovery); *see supra* at 11. Also as with the RFPs, every single request objects on the basis of Defendants' disagreement that Plaintiffs are entitled to discovery at all. *See* Ex. 15 at 9, 10, 12, 14 (repeating verbatim objection to each request that because some of Plaintiffs' multiple claims are "under the Administrative Procedure Act and an Administrative Record will be forthcoming," the Interrogatory is "disproportionate" and is—to the extent it becomes warranted at any point—"premature" because an administrative record is purportedly forthcoming); *see supra* at 11-12. And again, as with the RFPs, Defendants object to each interrogatory as "expressly seek[ing] only privileged information in violation of Fed. R. Civ. P. 26(b)(1)," raising a slew of privileges like "law enforcement sensitive" and "law enforcement privilege" without any basis for their application. *See* Ex. 15 at 9, 10, 12, 14; *see also supra* at 12. Indeed, they raise these objections even for Interrogatories 3, 4, and 5, which seek exclusively descriptive information that is not privileged and, indeed, would be expressly disclosed on a privilege log of privileged documents. *See* Fed. R. Civ. P. 26(b)(5). Finally, again as with the RFPs, Defendants repeatedly object to any request mentioning the Settlement Agreement in *Trump v. IRS* as "improperly seek[ing] confidential attorney

communications and correspondence protected by Fed. R. Evid. 408" and involving "a matter before another court." Ex. 15 at 11, 13. But, as explained on pages 12-14, *supra*, there is no "settlement privilege" for discovery purposes, and Defendants themselves have recognized that the "Settlement Agreement" gave rise to the Anti-Weaponization Fund and Immunity Order at issue in this case.[3]

Third, Defendants' responses to Interrogatories 3, 4, 5, and 6 are obviously incomplete, and Defendants failed to supplement their answers even after conferring with Plaintiffs about each. Ex. 4 at 3-4. With respect to Interrogatories 3 and 4, which seek the identification of individuals involved in various stages of the Fund and the Agreement, respectively, Defendants failed to identify anyone at all besides two of the individuals that expressly signed the publicly available "Settlement Agreement." Ex. 15 at 9-11. Defendants did not even identify Acting Attorney General Blanche himself, who signed both the Funding Order (Dkt. No. 123-3) and the Immunity Order (Dkt. 123-2), which was part of the "Agreement" as defined in the Interrogatories, *see* Ex. 6 at 2. Nor do they identify every single individual that signed the Agreement. *Compare* Ex. 15 at 11 *with* Dkt. No. 123-1 (Agreement) at 8-10. Defendants' failure to provide the names of individuals in response to Plaintiffs' interrogatories has prejudiced Plaintiffs' ability to prepare their case. For example, Plaintiffs have been unable to notice depositions of individuals who were involved in developing the Fund at issue in this lawsuit.

Next, Defendants "declined" altogether to answer Interrogatory 5, which asks them to identify communications between the government and the plaintiffs in the *Trump v. IRS* case that created, modified, or abandoned the agreement. Ex. 15 at 11-13. But in "declining," they rely

---

[3] Indeed, Defendants go so far as to "refer and incorporate the objections to Requests for Production 2 and 7" into their objections to Interrogatory 5. Ex. 15 at 13. That is not the kind of "specific" objection that the Rules require. *See* Local Civ. R. 26(C) ("Any such objection shall be specifically stated.").

primarily on Federal Rule of Evidence 408 and relevance, *id.*, both of which do not apply. *See supra* 12-14, 16-17.

Finally, as to Interrogatory 6, which asks for the identification of decisions or plans to provide redress to claimants to the Fund, Defendants' response is inadequate on its face. Ex. 15 at 14-15. Defendants fail to acknowledge that several individuals have, in fact, submitted public claims to the Fund, including in this case, *see* Dkt. Nos. 66, 77, despite that Plaintiffs included these examples in their filings, Dkt. Nos. 1 ¶ 97, 123 ¶ 123; *see also* Ex. 2 at 4.

The Court should compel Defendants to provide complete answers to Interrogatories 3, 4, 5, and 6, with all objections deemed waived.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order compelling Defendants to produce initial disclosures, no later than three days after the date of this Court's order; search for and produce all non-privileged documents responsive to Plaintiffs' RFPs 1, 2, 3, and 7, with all non-privilege objections deemed waived, and a log of all documents withheld or partially withheld on the basis of privilege that adequately describes the privilege(s) claimed, no later than ten days after the date of this Court's order; and provide complete answers to Interrogatories 3, 4, 5, and 6, with all objections deemed waived, no later than ten days after the date of this Court's order.

August 21, 2026

Paras N. Shah*
General Counsel
NATIONAL TREASURY EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5500
paras.shah@nteu.org

*Counsel for NTEU*

Respectfully submitted,

/s/ *Catherine M.A. Carroll*
Catherine M.A. Carroll (Va. Bar No. 50939)
Joel McElvain (Va. Bar No. 95215)
Pooja A. Boisture*
Jyoti Jasrasaria*
Aman George*
Lisa Newman* ^
Cynthia Liao*
Ayesha Khan*
Robin F. Thurston*
Skye L. Perryman*
ccarroll@democracyforward.org
jmcelvain@democracyforward.org
pboisture@democracyforward.org
jjasrasaria@democracyforward.org
ageorge@democracyforward.org
lnewman@democracyforward.org
cliao@democracyforward.org
akhan@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

*Counsel for Plaintiffs*

* Admitted *pro hac vice*

^ Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the District of Columbia Bar.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of August, 2026, I will cause the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, thereby serving all counsel who have appeared in this case.

*/s/ Catherine M.A. Carroll*
Catherine M.A. Carroll (Va. Bar No. 50939)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ccarroll@democracyforward.org

*Counsel for Plaintiffs*