**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Andrew Floyd *et al.*,<br>Plaintiffs,<br><br>v.<br><br>Department of Justice, *et al.*,<br>Defendants. | ) | No. 1:26-cv-1399-LMB |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO COMPEL**

## INTRODUCTION

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). An interrogatory may relate to any matter that may be inquired into under Rule 26(b). Rule 33(a)(2). Requests for documents "must describe with reasonable particularity each item or category of items to be inspected." Rule 34(b)(1)(A).

The discovery requests Plaintiffs move to compel fail each of these standards. In fact, their motion lays bare their intention to use discovery in this case to attempt to conduct discovery related in another civil matter brought before a different judge in a different district. Plaintiffs' requests explicitly seek information related to the case *Trump v. IRS*, a case in a faraway district not pending here in the Eastern District of Virginia. Nor are the requests related to the Fund—which has never existed and will not exist—which Plaintiffs do not even allege they would have applied to anyway. Instead, Plaintiffs are overtly attempting to use this Court's discovery process to conduct discovery on the proceedings of a different civil action, between the government and third-party plaintiffs, in litigation brought in the Southern District of Florida. Because this Court should conclude it does

not have jurisdiction to hear Plaintiffs' claims, it should not consider the instant motion or at worst, should defer consideration until the Court has ruled on the question of jurisdiction.

To the extent the Court nevertheless endeavors to address the instant motion, because Plaintiffs have not propounded proper discovery requests, that 1) are related to the case at bar; 2) do not reasonably articulate the information sought; and 3) are not proportional to the needs of the case, the Court should deny the motion to compel.

**BACKGROUND**

This case is on a unique procedural posture in several ways. First, discovery was opened following the preliminary relief stage and while Defendants' motion to dismiss remains pending. Dkt. 95. And though Plaintiffs move to compel discovery at this early stage, events the Court has identified as likely mooting this case have come to pass. *See* Dkt. 135; Dkt. 147 at 8 (PageID# 2919). Because Defendants' pending motion to dismiss raises several key jurisdictional issues, the Court should resolve that dispositive motion before weighing in on a motion to compel. "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998). Accordingly, "the district court must have jurisdiction … before the discovery rules become operative." *Al Fayed v. CIA*, 229 F.3d 272, 276 (D.C. Cir. 2000).

Another unique aspect about this case is that the Court has ordered both discovery as well as the production of an Administrative Record. *See* Dkt. 113, 114; *See Brandon v. Nat'l Credit Union Ass'n*, 115 F. Supp. 3d 678, 684 (E.D. Va. 2015) ("In the normal course of an APA case, there is no need for discovery because judicial review of agency action is confined to the administrative record of the proceedings before the agency. Supplementation of the administrative record in an APA case is appropriate only in very limited circumstances."). Defendants have produced both a robust Administrative Record (more than 700 pages) and responded to Plaintiffs'

sweeping first discovery requests, all ahead of having their dispositive motion to dismiss—which raises numerous jurisdictional issues with Plaintiffs' case—resolved Any notion that Defendants have been dilatory or otherwise unresponsive is therefore unfounded. *See* Motion at 2–4.

Finally, while Defendants have produced an Administrative Record and responded to Plaintiffs' sweeping discovery requests, Plaintiffs have yet to agree to a protective order or agree to any other basic stipulations that would promote the efficient conduct of discovery, such as basic custodial or temporal (i.e. agreeing that any search window ends the day the action commenced) limitations to their Requests. In other words, while Plaintiffs aggressively move to compel discovery from Defendants, they have declined to take their own initial steps, precluding Defendants from producing documents or otherwise responding to discovery requests until Defendants can assure themselves that Plaintiffs will not misuse confidential information.

**A. Preliminary Injunction Hearing**

Although this litigation has not (yet) been shaped by responsive pleadings, this Court has provided some guidance on what it views as within the scope of the civil action, and importantly, outside of it. At the Preliminary Injunction hearing, during a discussion of facts that might moot the case, the Court and the Plaintiffs had the following exchange:

> [THE COURT:] If, in fact — because as I understand the plaintiffs' position, if you get a declaration, a clear unambiguous declaration under the penalty of perjury that would have to be signed off by the Acting Attorney General and the Secretary of the Treasury, because they are the two defendants, that you would dismiss this case; is that correct?
>
> MS. BOISTURE: Your Honor, we would — we wouldn't be moving for a preliminary injunction anymore. I do need to confer with our clients as to whether or not we would actually fully dismiss the case at that point.
>
> THE COURT: All right. Now, I thought at least — and, again, I know you're not related to the case in D.C. I thought that that kind of a clear declaration would satisfy that plaintiff, but you think there's something else you would want besides just a --as I said, a clear unambiguous declaration would not be sufficient?

> MS. BOISTURE: Your Honor, the reason being that there's this other document in play that has also put the fund in motion, that's the settlement agreement at issue in *Trump v. IRS*. And so, yes, while a signed sworn testimony would go most, or at least a lot of the way, I think that's something we need to figure out as to that missing element of the *Trump v. IRS* settlement.
>
> THE COURT: Well, that issue I'm not touching because it's before another judge in another district, whether or not that settlement is actually a valid legal settlement coming out of any kind of legitimate legal activity in that court, or whether it could — so, I mean, I don't think that's appropriate, *and that's beyond the scope of what this Court, I think, has before it*; all right?

Hearing Transcript at 18:19–19:23 (emphasis added). Plaintiffs advance the same exact argument in this motion despite the Court already dismissing them outright. The Court should not revisit and reverse itself on the same issue in the discovery context.

**B. Requests At Issue in the Instant Motion.**

At issue in the pending motion to compel are the following Interrogatories and Requests for Production of Documents. Plaintiffs also move to compel initial disclosures, which are addressed in the Argument section, *infra*. Noticeably absent from Plaintiffs' recitation of the facts, amid their allegations of "violation of this Court's order," Motion at 2, and "refus[als] to adequately respond to discovery requests," Motion at 3, is the fact that Defendants have responded to, without any issue, five Requests for Admission, two Interrogatories (though as discussed later, the Defendants answered all but one Interrogatory), and three Requests for Production.

1. <u>Interrogatories</u>

> Below are the Interrogatories and responses at issue.
>
> **INTERROGATORY NO. 3:** Identify any and all individuals involved in the conception, creation, or operation of the Fund, including individuals involved in the Blanche Order, and their respective roles.
> **RESPONSE**: Subject to, and without waving any of the objections stated above, to the extent that this Interrogatory calls for any non-deliberative or otherwise privileged information, Defendants answer that the Fund has not been created or operated. The Order, signed by then-Acting Attorney General Blanche on May 18, was not implemented, *see* Dkt. Nos. 62 at 12; 93-1 at 17–18; 94, and was later

rescinded, Dkt. 123-5. As Acting Attorney General Blanche testified under oath "there is no weaponization fund. … It never started. No money went from the Treasury to any other account. There's no commissioners." Senate Judiciary Committee, Nomination Hearing of the Honorable Todd Blanche to be Attorney General of the United States at 1:26:42–1:27:22. Additionally the Acting Attorney General's August 2, 2026 Order further states "No Members were appointed; no funds were transferred; no process for receiving claims was established; no claims were paid."

**INTERROGATORY NO. 4:** Identify any and all individuals involved in the conception, creation, consummation, or modification of the Agreement, and their respective roles.
**RESPONSE**: Subject to, and without waving any of the objections stated above, to the extent that this Interrogatory calls for any non-deliberative or otherwise privileged information, Defendants answer that the Settlement Agreement (ECF No. 1-2) was signed by Associate Attorney General Stanley E. Woodward, Jr. on behalf of the United States and by the Chief Executive Officer Frank Bisignano on behalf of the Internal Revenue Service. As Acting Attorney General Blanche testified under oath "There's no modification. It never started … There's no commissioners. It's not moving forward." Senate Judiciary Committee, Nomination Hearing of the Honorable Todd Blanche to be Attorney General of the United States at 1:27:12–1:27:22.

**INTERROGATORY NO. 5:** Identify any and all communications between the government and the plaintiffs in the *Trump v. IRS* case that created, modified, or abandoned the Agreement.
**RESPONSE**: Defendants decline to answer this question based on the objections identified above. This interrogatory abuses the civil discovery process to seek Rule 408 protected communications in an unrelated civil matter before a different court. Confidential settlement communications in another civil matter have nothing to do with the Plaintiffs' assertion that they would not have applied to the non-existent Ant-Weaponization Fund.

**INTERROGATORY NO. 6:** Identify any and all decisions or plans to provide redress to claimants to the Fund from sources other than the Fund.
**RESPONSE**: Subject to, and without waving any of the objections stated above, to the extent that this Interrogatory calls for any non-deliberative or otherwise privileged information, Defendants answer that the there are no "claimants to the Fund." As Acting Attorney General Blanche testified under oath "there is no weaponization fund. … It never started. No money went from the Treasury to any other account. There's no commissioners." Senate Judiciary Committee, Nomination Hearing of the Honorable Todd Blanche to be Attorney General of the United States at 1:26:42–1:27:22. Additionally the Acting Attorney General's August 2, 2026 Order further states "No Members were appointed; no funds were transferred; no process for receiving claims was established; no claims were paid."

2. Requests for Production

Below are the Requests for Production, and responses, at issue.

**RFP NO. 1:** Any and all documents and/or communications—including between the government and the plaintiffs in the *Trump v. IRS* case—concerning the conception, creation, operation, status, or plans for the Anti-Weaponization Fund, including about the eligibility criteria for awards from the Fund.
**RESPONSE**: Because Plaintiffs have not limited the scope of this Request since the Parties' meet-and-confer, the Defendants stand on their objections and are not producing documents in response to this request.

**RFP NO. 2:** Any and all documents and/or communications—including between the government and the plaintiffs in the *Trump v. IRS* case—concerning the Agreement or any of its provisions, including about the Agreement's conception, creation, consummation, modifications, and status.
**RESPONSE**: As Plaintiffs have not limited the scope of this Request since the Parties' meet-and-confer, the Defendants stand on their objections stated above and are not producing documents in response to this request.

**RFP NO. 3:** Any and all documents and/or communications concerning the Blanche Order, including its current status.
**AMENDED RFP NO. 3**: Any and all documents (excepting drafts of the Blanche order) and/or communications concerning the Blanche Order, including its current status.
**RESPONSE**: The Plaintiffs are already in possession of the final, nonprivileged Blanche Order of May 18, Dkt. 123-3, and the Order rescinding the Blanche Order, Dkt. 123-5. With respect to the remainder of the request, the Defendants stand on their objections.

**RFP NO. 7:** Any and all documents identified in response to Interrogatory No. 5.
**RESPONSE**: Defendants stand on their objections to this request. This Request abuses the civil discovery process to seek communications in an unrelated civil matter before a different court. Communications in another civil matter have nothing to do with the Plaintiffs' assertion that they would not have applied to the non-existent Ant-Weaponization Fund.

**C. Objections and Attempts to Narrow**

As Plaintiffs note, an initial meet-and-confer was held on July 29, over a week before the discovery responses were due. It is true that counsel for the Defendants had mis-calendared the date on which objections were due. That error was discovered two days past the date which objections were due, at which time the undersigned counsel immediately raised the issue with

counsel for Plaintiffs and asked if Plaintiffs would agree to waive timeliness objections if the objections were served that day [a Friday] or the following Monday. In that email, counsel also offered a prompt meet-and-confer to discuss the issues so as to not prejudice any party by the inadvertent error. Plaintiffs responded that they did not have the authority to agree to an extension and subsequently advised that if Defendants sought a motion to extend time *nunc pro tunc*, they would not oppose. Defendants produced their objections the same day the error was discovered and did not file any motion, choosing instead to work proactively to try and avoid discovery motions by having several meet-and-confers and addressing Plaintiffs concerns where possible.

At the July 29 meet-and-confer, as well in subsequent ones, Defendants explained that the Requests for Production One, Two, and Three are propounded in a way that is so overbroad that a meaningful search cannot occur. Defendants have repeated the arguments presented below relating to proportionality (and even relevance) to this case. And Defendants have continued to work in a good-faith, iterative process to provide Plaintiffs with answers to their requests while protecting their legal rights and interests. As just one sign of this, Defendants provided amended answers just two days before this motion to compel was filed, addressing several concerns raised by Plaintiffs. Conversely, Plaintiffs have not offered a single concession or accommodation to any of Defendants' concerns, including for example, any limitation whatsoever on the Requests at issue.

## ARGUMENT

The Court should deny this motion. As the exchange at the Preliminary Injunction hearing and Plaintiffs' arguments here make clear, the purpose of these discovery requests are not about facts that go to a claim or defense *of this action*. Instead, Plaintiffs seek *discovery into another action*, brought in the Southern District of Florida. On that topic, this Court has already said "I'm not touching [that issue] because it's before another judge in another district, … I don't that's

appropriate, and that's beyond the scope of what this Court, I think, has before it." Hearing Transcript at 19:17–19:23. Moreover, the Interrogatories have been answered, save Interrogatory Five. But just because a party does not like, does not want to accept, or does not believe the answer does not mean the interrogatory is unanswered. Finally, the government does not have an obligation to provide initial disclosures where, as here, an administrative record was produced.

**A. Plaintiffs' Requests are neither relevant nor narrowly tailored to *this* litigation.**

1. Requests explicitly seek information about another civil matter, in another court, and not this case.

As an initial matter, the core of the disagreement between the parties is whether a litigant in the Eastern District of Virginia can use its claims to conduct discovery over a case, to which the Plaintiff is not a party, brought before another judge, in another federal district. The obvious answer is that it cannot. Indeed, this Court has already answered that question. Nevertheless, Plaintiffs propound Requests for Production 1, 2, and 7, and Interrogatory 5 with explicit and express references to the Florida case of *Trump v. IRS*. Interrogatory 3, 4, and 6 all reference the Fund, which they define as "the Anti-Weaponization Fund that DOJ announced as part of the agreement to settle *Trump v. IRS*." They further define "Agreement" with explicit reference to that case as well. *See, e.g.*, Dkt. 144-1 at 28, 37 [PageID# 2753, 2762].

In other words, all but one of the requests that Plaintiffs seek to compel an answer on they have explicitly tied to a case, and an argument, that Judge Brinkema has expressly rejected saying it is "beyond the scope" of what is appropriately before this Court. This is a clear abuse of the discovery process. Discovery must be tailored to the case at bar, but Plaintiffs are explicitly seeking communications in other actions before other district courts.

2. Even if the Requests were about this case, they are not proportional to the needs of this litigation.

*i. Plaintiffs' requests are unlimited and do not reasonably describe the material sought.*

The federal rules require the party propounding discovery to "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1). Plaintiffs have not done that here. Instead, Plaintiffs have propounded "home-run" or "give-me-everything" style requests, unlimited in any fashion to relevant custodians, offices, or even time frame. Instead, Plaintiffs demanded that the document requests stand and it is now incumbent on the Defendants to go find the needle in the haystack that Plaintiffs seek.

For RFP Nos. 1–3, Defendants have repeatedly asked for limitations they can apply to these requests. But Plaintiffs refuse to offer any temporal, custodial, or other limitation at all to help shape a search for documents. Instead, they maintain that it is now Defendants' sole burden to take the "all documents and/or communications concerning" requests and rewrite it for the Plaintiffs. Defendants have objected that a search of nearly 200,000 employees across two Departments is not a reasonable expectation for the needs of this case. For their part, Plaintiffs say that is not a reasonable interpretation of the request, but stop short of articulating what a "reasonable" reading of the requests would be.

To be clear, Defendants have many objections to these requests. But they have never said they would refuse to conduct a search for documents responsive to these requests. What they have said is that in order to conduct such a search, Plaintiffs must propound a request that describes with reasonable particularity the responsive materials sought. Plaintiffs have not done so here and thus, until the requests are narrowed, they are not proper.

To date, Plaintiffs have not once offered a single narrowing of RFP 1 or RFP 2. While they offered a slight narrowing of RFP 3 (allowing Plaintiffs to exclude draft documents which are universally understood to be protected), they did not narrow the "communication" side of that request, so Defendants are left with the same search problem as RFP 1 and RFP 2.

*ii. Confidential communications from another matter are not proportional to the needs of this case, especially without a heightened showing of need.*

Underpinning that the documents Plaintiffs seek are not really related to the claims or defenses at issue in this case, Plaintiffs fight the hardest to gain access to the government's settlement communications with opposing counsel in another matter. Despite Plaintiffs' characterization of the objection, Defendants position is not simply "Rule 408 prevents discovery." Obviously, Rule 408 is a rule governing admissibility not discoverability. Rather, Defendants object that Plaintiffs are expressly seeking communications which the Fourth Circuit and many of the districts within it, have recognized are entitled to enhanced protection. This is compounded by the fact that the settlement communications sought are in a different matter this Court has already said is not before it. And Plaintiffs demand this highly confidential information without a protective order in place to secure it.

It is not a new or novel concept that—in the interest of getting cases to settle without sending every case filed to trial—lawyers need the ability to negotiate a resolution of their clients' claims. Indeed, the Fourth Circuit, and many of the districts within it have recognized, and afforded heightened considerations to settlement communications.

Addressing the need for confidentiality in settlements and mediations, the Fourth Circuit has held "The assurance of confidentiality is essential to the integrity and success of the Court's mediation program, in that confidentiality encourages candor between the parties and on the part of the mediator, and confidentiality serves to protect the mediation program from being used as a

discovery tool for creative attorneys." *In re Anonymous*, 283 F.3d 627, 636 (4th Cir. 2002). That is not to say there is a settlement privilege—and to be clear Defendants do not say that.

But in applying *In re Anonymous*, many courts in this Circuit have recognized the importance of confidential communications remaining confidential and required a higher showing in several contexts. "While the Fourth Circuit has not recognized a settlement privilege, it has indicated that it would apply enhanced protections to settlement documents and communications sought in discovery. In *In re Anonymous*, the Fourth Circuit required a heightened showing by parties seeking to disclose confidential settlement information to resolve a dispute. 283 F.3d 627 (4th Cir. 2002). The court determined that it must "balance the public interest in protecting the confidentiality of the settlement process and countervailing interests, such as the right to every person's evidence. *Id.* at 637." *Wyeth v. Lupin Ltd.*, Case No. 1:07-cv-00632-WDQ, 2008 WL 11509482, at *3 (D. Md. Mar. 28, 2008).[1]

Attorneys across the country—from U.S. Attorneys Offices to private sector firms representing parties in litigation against the government—would be quite surprised to learn that their settlement communications are: 1) now discoverable; 2) in actions brought in different

---

[1] *See also CHS Inc. v. ABM Healthcare Support Servs., Inc.*, No. 7:19-cv-788, 2021 WL 149861, at *3 (W.D. Va. Jan. 15, 2021) ("I find it appropriate to proceed with caution when allowing one party to conduct discovery into another party's ongoing settlement negotiations and discussions."); *Coffey v. Hartford Life & Accident Ins. Co.*, 318 F.R.D. 320, 325 (W.D. Va. 2017) ("Because Coffey's claim concerns the release and not all of the settlement discussions, this interrogatory is overly broad. Accordingly, the interrogatory shall be limited to those facts known to anyone involved in this case concerning Hartford's request in settlement discussions that Coffey execute the release."); *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, 2020 WL 6947921, at *3–4 (M.D.N.C. Sept. 29, 2020) ("[W]hen the disclosure of settlement negotiations is at issue, a particularized showing of relevance by the party seeking such documents is appropriate."); *see also Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, 2019 WL 6108220, at *6–7 (N.D. Ill. Nov. 15, 2019) ("Consideration of the social policies Rule 408 seeks to promote fits well within Rule 26(b)(1)'s conception of proportionality. … Disclosure of Rule 408-protected materials creates a . . . chilling effect on free and frank settlement negotiations.").

jurisdictions; 3) by parties foreign to the civil action they are litigating. But that is the standard Plaintiffs seek to set with this motion.

**B. Initial Disclosures Are Not Required Where, As Here, an Administrative Record Was Produced.**

Rule 26 reads, in pertinent part, as follows:

> (a) REQUIRED DISCLOSURES.
>
> (1) *Initial Disclosure*.
>
> (A) *In General*. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (B) *Proceedings Exempt from Initial Disclosure*. The following proceedings are exempt from initial disclosure:
>
> (i) an action for review on an administrative record;

It is an unusual case that requires the production of an administrative record and then allows for discovery. "[J]udicial review of agency action is generally limited to the administrative record," and "discovery is typically not permitted" unless the record is incomplete; such a showing requires discovery proponents to "overcome the 'presumption of regularity.'" *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794–95 (E.D. Va. 2008) (citing *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926)). That presumption controls "absent *clear evidence*" that the agency failed to "properly designate[] the administrative record." *Id.* at 795; *see also Mayor & City Council of Balt. v. Trump*, 429 F. Supp. 3d 128, 138 (D. Md. 2019) ("[M]ere allegations of bad faith are inadequate to overcome the presumption of regularity" and do not by themselves justify "extra-record discovery"). "[E]ven where plaintiffs have asserted constitutional claims, 'wide-ranging discovery is not blindly

authorized at a stage in which an administrative record is being reviewed.'" *Dudas*, 530 F. Supp. 2d at 802 (quoting *Puerto Rico Public Housing Admin. v. United States Dep't of Housing and Urban Development,* 59 F.Supp.2d 310, 327 (D.P.R. 1999)).

Making the posture even more unique, is that fact discovery was ordered before the Administrative Record was produced, evaluated, or challenged. Nevertheless, Defendants have complied with the Court's scheduling and discovery orders, even over its concerns about the process. *See* Dkt. 132. All this to say, the specific factual posture: whether initial disclosures are required when fact discovery is also opened, is not one that is routinely addressed by the courts because fact discovery almost never opens before the production of an administrative record. To the contrary, in the rare instances in which it is permitted, the purpose of such discovery is to supplement information in the administrative record itself. *See, e.g.*, *SourceAmerica v. U.S. Dep't of Educ.*, 2018 WL 10436584, at *3 (E.D. Va. July 5, 2018); *Outdoor Amusement Bus. Assoc., Inc. v. DHS*, 2017 WL 3189446, at *12 (D. Md. July 27, 2017) ("If an agency fails to produce a complete administrative record, a party may request supplementation of the record.").

Clearly, cases where an Administrative Record is produced are different from cases where they are not. In recognition of that, Plaintiffs main argument appears to be that they were not timely notified of Defendants' position that initial disclosures were not required in this case. Motion at 8. In support of that position, Plaintiffs cite Rule 26(a)(1)(C) which states:

> (C) *Time for Initial Disclosures*—In General. A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

Of course, because Subsection C follows subsections A and B it must be read in context of those provisions. That is to say, it logically follows that the time and process for making initial

disclosures only applies when such disclosures must be made after the application of subsections A and B. But if there is a scenario where the "as exempted by Rule 26(a)(1)(B)" applies, there would be no reason to apply (C); the inquiry is ended when an exemption applies.

This aside, the timeliness objection fails anyway as this was the first matter discussed on the record at the Pretrial Conference. In response to a direct question from the Court about whether Defendants were on track to make initial disclosures, counsel for Defendants stated, in open court and on the record, that, "To the extent such disclosures are required." Counsel proceeded to explain Defendants' view that Rule 26(a)(1)(A) contains an explicit exemption from the default rule for cases in which an Administrative Record is produced.

This explanation prompted this Court to ask the natural follow-up question of whether Defendants were on track to produce the Administrative Record. Counsel for Defendants stated Defendants were on track to do so; and can now represent that the Administrative Record was timely produced to the Plaintiffs on August 17, 2026.

Ultimately, the assertion that the lack of initial disclosures is in violation of representations or Court Orders is baseless. Plaintiffs have been on notice for over a month that this was Defendants' position. Minute Entry Dated July 22, 2026; Dkt. 144-1 at 2–3 And in that time, they could have sent an Interrogatory asking for the information or moved the Court for it, as they have done now. But in waiting a month to seek relief from the Court on this topic, the sudden urgency to make disclosures within three days of the Order rings hollow.

The Court should deny the motion to compel production of initial disclosures. If it is inclined to grant this motion, however, it should allow the Defendants the standard eleven days to respond under Local Civil Rule 37(C).

### C. Interrogatories 3, 4, and 6 Have Been Answered

Plaintiffs move to compel answers to Interrogatories 3, 4, and 6; but those have all been answered. And the answers are consistent with the representations across briefing on this matter in three different jurisdictions, and countless statements of the Attorney General when answering questions about the Fund: It never started and the order he signed has been officially rescinded. That an answer is not the anticipated answer or does not support Plaintiffs' case theory does not make the answer incomplete. And to the extent that the answers to the Interrogatories are incomplete, as Plaintiffs suggest, the only remaining portions to answer are improper. "Parties may obtain discovery regarding any nonprivileged matter…" Fed. R. Civ. P. 26(b)(1).

Take Interrogatory 3 for instance. Plaintiffs object there that Defendants have not answered whose idea it was to settle a case in a particular manner. Plaintiffs object that the answer is incomplete because Defendants did not specifically answer some sub-portion of the Interrogatory that required it to state all individuals who had a "conception of" the Fund. Never mind that the dictionary definition of "conception" is "the process of forming an idea"[2] or that the Fund does not, and will not, exist; if this is the reading of the Interrogatory that Plaintiffs move to compel further answer on, it is not a proper Interrogatory to begin with. It explicitly asks for the mental impressions of a Justice Department Attorney litigating a case.

Throughout the briefing Plaintiffs conflate the lack of a privilege log currently with a blanket refusal to produce one. To be clear, Defendants have not refused to produce a privilege log; one is simply not yet required. But relying on the insinuation that Defendants will refuse to create a log, the Plaintiffs try to sneak though requests that seek exclusively privileged information.

---

[2] *Conception*, Merriam-Webster, https://www.merriam-webster.com/simple/conception (last visited Aug. 26, 2026).

The result would be simply to make Defendants go through the process of creating a privilege log—in response to improper requests.

This is demonstrated time and again by Plaintiffs' refusal to place any limitations on its Requests or seek discovery in a way that limits the incidental inclusion of privileged material. These Interrogatories, to the extent they are not answered, explicitly ask for the mental impressions of Justice Department attorneys working on cases, or who worked on a document before the Attorney General signed it; and then demand a privilege log. But the fact of the matter is they have no right to demand that information in the first place because the requests are written only to seek Attorney Work Produce, Attorney Client Privileged, and Deliberative Process Privileged information. This is a clear abuse of discovery procedures and should not be rewarded.

**D. The Objections are specific to each Request**

Aside from the timeliness issue, addressed above, Defendants objections are individualized to each request. Just because Defendants have the same or similar objection to multiple Requests does not mean that the objection, each time it is asserted, is not sufficiently particularized. For example, several Requests for Production all explicitly seek (and others implicitly seek) documents related to another case. Thus, the objection that such requests are inappropriate are made throughout. Similarly, requests to overbroad definitions, instructions, and implied concessions are properly preserved with respect to each request. While true that the initially served objections contained objections termed "general" any such terminology has long since been remedied. Once the timeliness issue had been realized, Counsel for Defendants prioritized communicating the substance of the objections to counsel for Plaintiffs. And in fact, the substance of the objections was communicated the same day it was realized they were past due (two days) and before Plaintiffs raised any concerns with the lack of objections.

In any event, there can be no serious argument that Plaintiffs were not aware of the specific objections to each discovery request following the first meet-and-confer held on July 29, 2026—over a week before discovery responses were due. *See* Dkt. 144-1 at 5–9 (including a 4-page write up of the specific, request-by-request issues covered on the meet-and-confer).

**E. If the Court is going to order the Production of Documents, it should order the entry of a Protective Order first.**

For the reasons stated above, the Court should deny Plaintiffs motion in its entirety. If the Court is going to Order Plaintiffs to produce documents, however, it should stay the effect of that Order until Plaintiffs have agreed to enter into a Protective Order.[3] Every time Defendants have raised the issue of a Protective Order in this case, Plaintiffs have pushed back strongly, questioning the premise and need for such an order. But since Plaintiffs are seeking confidential documents, to the extent the Court orders them produced, it should also order the attorneys and parties appearing in this case to agree to a Protective Order that will protect sensitive information.

## CONCLUSION

Unlike the Plaintiffs, who have not offered any reasonable interpretation or narrowing of their endlessly expansive requests—and to be clear Plaintiffs have made zero accommodations thus far—Plaintiffs have responded to all the discovery requests, amended the discovery answers, and produced an Administrative Record of over 700 pages. All while briefing the motion to dismiss, and then re-briefing it in response to the amended complaint. The idea that Defendants are dragging their feet or delinquent in their discovery duties is patently absurd. Defendants have engaged in a good-faith effort to respond to Plaintiffs' discovery while protecting their own legal

[3] Defendants note that they sent a draft Protective Order to Plaintiffs two weeks ago and only received a heavily edited draft back approximately one hour before the deadline to file this brief. In those two weeks Plaintiffs have had the time to file this motion to compel and serve additional discovery requests.

interests through the procedures available to them under the Federal Rules of Civil Procedure and this Court's local rules. But the discovery rules work both ways and Plaintiffs must propound discovery that is 1) actually tailored to this case; and 2) reasonably articulates what it seeks. Because Defendants produced an administrative record, the obligation to produce initial discovery under Rule 26 is extinguished.

For these reasons, the Court should deny the Plaintiffs' Motion to Compel. In the alternative, this Court should order Plaintiffs to execute a protective order before receiving any additional documents or information.

Dated: August 26, 2026

Respectfully Submitted,

STANLEY E. WOODWARD, JR.
ASSOCIATE ATTORNEY GENERAL

*/s/ Andrew J. Block*

ANDREW J. BLOCK
Senior Counsel to the Associate Attorney General
950 Pennsylvania Ave. NW
Washington D.C. 20530
Andrew.Block@usdoj.gov
(202) 372-7565

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

/s/ *Andrew J. Block*
Andrew Block