**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
ALEXANDRIA DIVISION

**Andrew Floyd, et al.**,

Plaintiffs,

v.

**Department of Justice, et al.**,

Defendants.

Case No. 1:26-cv-01399-LMB

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTIONS FROM THE MAGISTRATE JUDGE'S ORDER ON A NONDISPOSITIVE MATTER**

*"We will continue to meet the government in court until our investigation is complete."*
- Counsel for Plaintiffs to Law360. Sept. 4, 2026.

The United States Defendants implore this Court to consider the remarkable posture with which this matter comes before the Court. Plaintiffs filed this litigation challenging an agency action—the signing of a memo and issuance of a now-rescinded many times over order. In any other Presidential Administration this litigation would be limited to a challenge under the Administrative Procedure Act. *See Brandon v. Nat'l Credit Union Ass'n*, 115 F. Supp. 3d 678, 684 (E.D. Va. 2015) ("In the normal course of an APA case, there is no need for discovery because judicial review of agency action is confined to the administrative record of the proceedings before the agency. Supplementation of the administrative record in an APA case is appropriate only in very limited circumstances."). Indeed, the Magistrate has concluded that several of Plaintiffs claims are APA claims. Dkt. 155 at 33:24–35:5. The United States Defendants have vociferously advocated that Plaintiffs are precluded from bringing any such challenge because they lack standing to challenge the agency actions at issue. Nevertheless, while this Court's review of the

threshold legal questions are pending, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause"); *see also Al Fayed v. CIA*, 229 F.3d 272, 276 (D.C. Cir. 2000) ("[T]he district court must have jurisdiction . . . before the discovery rules become operative"), Plaintiffs have embarked upon a remarkably broad fishing expedition couched as "reasonable" discovery.

To be clear, Plaintiffs are entitled to no discovery because they lack standing to pursue this litigation. Plaintiffs are also entitled to no discovery because this APA action precludes any such discovery—Plaintiffs can challenge the administrative record the United States produced. *See* Fed. R. Civ. P. 26(a)(1)(A), (B); *American Canoe Ass'n, Inc. v. EPA*, 46 F. Supp. 2d 473, 477 (E.D. Va. 1999). Yet the Magistrate is permitting Plaintiffs' discovery requests and, in so doing, is vitiating core Article II privileges that protect the functions of the Executive Branch. Indeed, Plaintiffs' counsel views this as an "investigation" because after leaving the podium last week, he went straight to the media and said, "We will continue to meet the government in court until *our investigation is complete*." *DOJ Ordered to Turn Over 'Weaponization' Fund Discovery*, Jared Foretek, LAW360 (Sept. 4, 2026) available at https://www.law360.com/articles/2521979/ (emphasis added).

But discovery is not a license to conduct a freewheeling "investigation" into Executive Branch functions. To the extent the Executive Branch must turn over documents to broad ranging document requests, the United States submits the proper manner for Plaintiffs (or any interested party) to seek the information they request regarding *Trump v. IRS* is to submit a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552. But this Court must not sanction Plaintiffs' broad fishing expeditions under the guise of "discovery" in an APA claim all while allowing Plaintiffs to circumvent the will of Congress in enacting FOIA. As it stands this Court's discovery

docket is being used to harass the Executive Branch, and its officials through these baseless discovery requests that are not even tailored to *this* litigation.

**Background**

This is an appeal from the Magistrate's order on a non-dispositive matter. The matter at issue is Plaintiffs' Motion to Compel discovery answers, Dkt. 143. The relevant filings are:

- Plaintiffs' Motion to Compel. Dkt. 143.
- Memorandum in Support of Motion to Compel. Dkt. 144.
- Memorandum in Opposition of Motion to Compel. Dkt. 149.
- Reply in Response to Motion to Compel. Dkt. 150.
- Minute Entry for proceedings held before Magistrate Judge Ivan D. Davis. Dkt. 153
- Order. Dkt. 154.
- Transcript of motions hearing held 8/28/26. Dkt. 155.
- Notice. Dkt. 156.
- Minute Entry for proceedings held before Magistrate Judge Ivan D. Davis. Dkt. 157.
- Order. Dkt. 158.
- Transcript of motions hearing held on 9/4/26. Dkt. 165.

A short summary of the relevant facts are as follows. On July 7, 2026, Plaintiffs propounded their first set of discovery requests. This included seven (7) Requests for Production ("RFP"), six (6) Interrogatories, and five (5) Requests for Admission. Defendants noted their objections on July 24. On July 29, 2026, counsel for the Parties held a meet-and-confer in which counsel for the United States Defendants explained that the RFPs, as propounded did not "describe with reasonable particularity each item or category of items to be inspected," Rule 34(b)(1)(A). This was because, among other things, the RFPs lacked time and document custodian limitations. Plaintiffs' counsel disagreed and did not offer limitations—either in time or by custodian—and instead moved to compel.

At the time this Motion was filed, the relevant RFPs and responses were:

> **RFP NO. 1:** Any and all documents and/or communications—including between the government and the plaintiffs in the *Trump v. IRS* case—concerning the conception, creation, operation, status, or plans for the Anti-Weaponization Fund, including about the eligibility criteria for awards from the Fund.

> **RESPONSE**: Because Plaintiffs have not limited the scope of this Request since the Parties' meet-and-confer, the Defendants stand on their objections and are not producing documents in response to this request.
>
> **RFP NO. 2:** Any and all documents and/or communications—including between the government and the plaintiffs in the *Trump v. IRS* case—concerning the Agreement or any of its provisions, including about the Agreement's conception, creation, consummation, modifications, and status.
> **RESPONSE**: As Plaintiffs have not limited the scope of this Request since the Parties' meet-and-confer, the Defendants stand on their objections stated above and are not producing documents in response to this request.
>
> **RFP NO. 3:** Any and all documents and/or communications concerning the Blanche Order, including its current status.
> **AMENDED RFP NO. 3**[1]: Any and all documents (excepting drafts of the Blanche order) and/or communications concerning the Blanche Order, including its current status.
> **RESPONSE**: The Plaintiffs are already in possession of the final, nonprivileged Blanche Order of May 18, Dkt. 123-3, and the Order rescinding the Blanche Order, Dkt. 123-5. With respect to the remainder of the request, the Defendants stand on their objections.

Dkt. 149 at 6. On August 28, 2026, the Magistrate held a hearing on the Motion to Compel, which resulted in the Magistrate ordering the Parties to meet and confer again to attempt to limit the scope of the disagreements and continued the hearing for one week. Dkt. 154.

The next day, Plaintiffs' counsel sent a letter, for the first time offering some narrowing construction of the RFPs—something Defendants had been seeking for over a month at that point. Then, during the August 31 meet-and-confer, Plaintiffs first offered custodial limitations. Having finally received that necessary information, Defendants immediately began the process of searching for responsive documents.

With respect to the Interrogatories, two are at issue.[2] Those read:

---

[1] The RFP was amended to except drafts as a result of the July 29 meet and confer.

[2] Though the parties agreed that Interrogatory 5 will likely turn on answers to RFPs One, Two, and Three; the Defendants still maintain that Interrogatory 5 and RFP Seven improperly seek discovery into another civil action. Those Requests are:

> **INTERROGATORY NO. 3:** Identify any and all individuals involved in the conception, creation, or operation of the Fund, including individuals involved in the Blanche Order, and their respective roles.
>
> **INTERROGATORY NO. 4:** Identify any and all individuals involved in the conception, creation, consummation, or modification of the Agreement, and their respective roles.

Defendants have answered, amended, and further amended their answers to these Interrogatories. The current posture is that Plaintiffs insist on seeking an answer to who "conceived of" the Fund and the Agreement. The Magistrate recognized that the formulation of the question "who conceived of" the documents was strange and did not present a relevant issue. But instead of denying the Motion, the Magistrate rephrased and ordered Defendants answer a new formulation—identify the "names of the individuals who came up with the way to structure the Fund"—of the Interrogatory be answered. Dkt. 165 at 37:15–16.

**Standard of Review**

"Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on nondispositive matters such as discovery orders." *Sharer v. Tandberg, Inc.*, Case No. 1:06-cv-626, 2007 WL 433152, at *2 (E.D. Va. Feb. 2, 2007). "As a nondispositive matter, the magistrate judge's discovery order is properly governed by the 'clearly erroneous or contrary to law' standard of review." *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (citing *Jesselson v. Outlet Assocs. of Williamsburg, LP*, 784 F. Supp.

---

> **INTERROGATORY NO. 5:** Identify any and all communications between the government and the plaintiffs in the *Trump v. IRS* case that created, modified, or abandoned the Agreement.
>
> **RFP NO. 7:** Any and all documents identified in response to Interrogatory No. 5.

As Defendants note in their papers, *see* Dkt. 149, these requests explicitly relate to how the Department of Justice litigated another case in another district and do not bear on the claims or facts at issue here.

1223, 1228 (E.D. Va. 1991)). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 337 (E.D. Va.), *aff'd*, 37 F.4th 160 (4th Cir. 2022) (quoting *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10-cv-121, 2010 WL 3069799, at *1 (E.D. Va. Aug. 5, 2010)).

"'Upon a timely objection to a magistrate judge's non-dispositive ruling,' a district court must "modify or set aside any part of the [ruling] that is clearly erroneous or contrary to law." *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, Case No. 1:19-cv-461, 2020 WL 1917837, at *4 (E.D. Va. Apr. 20, 2020) (Brinkema, J.) (quoting *Harrison v. Shanahan*, 2019 WL 2216474, at *4 (E.D. Va. May 4, 2019)). "'The deferential clear-error standard provides that factual portions of the magistrate's ruling' may only be modified or set aside where 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* "Legal portions of the magistrate's ruling, 'on the other hand, are reviewed under the contrary-to-law standard, which is essentially synonymous with *de novo* review.'" *Id.* "The court is entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the magistrate judge." *Id.*

**Argument**

The Magistrate committed legal error in four ways. First, by not addressing Defendants' arguments that Plaintiffs' discovery requests plainly improperly seek discovery into the *Trump v. IRS* matter and entering an order compelling discovery on topics unrelated to this civil action. Second, by granting the motion to compel for Plaintiffs and ordering an expedited response time when proper RFPs were not formulated until *after* the Motion and the August 28 hearing on that motion. Third, by ordering that a responsive search must cover through September 4, well after this Court's injunction, the Magistrate committed legal error in ordering searches that are arbitrary

and disproportional to the needs of the case. Fourth, in reframing already answered interrogatories, the Magistrate in effect propounded brand new interrogatories to Defendants. This Court should reverse the Order granting the Motion to Compel and halt all this unnecessary and irrelevant discovery.

## I. Plaintiffs' Requests are not related to *this* litigation.

As Defendants argued in their papers, Plaintiffs' discovery requests explicitly seek information about another civil matter, in another court, and not this case. Dkt. 149 at 1, 8. But the discovery rules state that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Here, the Requests at issue all seek information about how the Departments of Justice and Treasury handled the case of *Trump v. IRS*, which was not brought in the Eastern District of Virginia or even any court in the Fourth Circuit. Plaintiffs' requests and Motion to Compel lay bare their intent to improperly use this civil action as a vehicle to collaterally attack—or in their words "investigate"—a settlement agreement in another case they have a policy disagreement with. The Court should not indulge such an abuse of the discovery process and this its docket. By completely failing to address these arguments and assuming the relevance of anything related to the *Trump v. IRS* case the Magistrate committed legal error in determining the scope of discovery. Accordingly, the Court should reverse the order on the motion to compel, in its entirety, on this basis alone.

## II. The Motion to Compel should have been denied since Defendants began complying with discovery obligations as soon as Plaintiffs provided a valid RFP on August 31.

The Magistrate legally erred in "granting" the Motion to Compel and thus requiring an expedited search-to-production timeline of just 15 days when the Court did not actually compel a

response to the original RFPs. The valid amended RFPs were effectively issued on August 31 and the Defendants should have the normal time to respond, not the expedited compelled response timeframe. Requests for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Despite the United States asking, for over a month, Plaintiffs did not describe Requests 1, 2, and 3 with reasonable particularity until the meet-and-confer on August 31. It was, therefore, legal error for the Court to grant the Motion to Compel the RFPs on September 4 and impose an effective 15-day search-to-production timeline. Granting the Motion to Compel also puts the United States in the position that if there is any future disagreement on the RFPs at issue, those will be litigated against the backdrop of an order already entered against the Defendants; when all Defendants sought were reasonable limitations on the overbroad requests.

There has been no lack of diligence or bad faith by the United States Defendants here. It is not as though the Defendants found responsive documents and refused to produce them; or that there was a disagreement over a privilege log; or that the United States was dilatory in producing documents past the 30-day deadline. *See* Fed. R. Civ. P. 34. In fact, the opposite is true. As soon as Plaintiffs provided a custodian list, Defendants immediately began a search for responsive documents. Defendants can represent to this Court that collection and review is ongoing.

And while Defendants continue to disagree and object that extra-record discovery is appropriate here, Defendants do not expect the process to take a full 30 days and will produce documents when they are ready.[3] But Defendants are prejudiced by having one Motion to Compel

[3] This is with respect to records created on or before May 23, 2026. As discussed in Section III, infra, Defendants objected to searching records created after that date. Nevertheless, in accordance with the Court's Orders and the discovery rules the Defendants did not delay in searching for records produced during the time not in dispute.

granted against them if further disputes arise over a privilege log, search parameters (as described below), or other topics. Instead, now that Plaintiffs propound more close to proper RFPs that describe with particularity the items sought and Defendants are meeting their discovery obligations, the Motion should have been denied with respect to RFPs 1, 2, and 3. But the Magistrate's Order put the Defendants on the expedited timeframe to respond even though he was not compelling compliance with the original RFPs. *See* Dkt. 165 at 7:6–7:10.

### III. Timeframe of Search for Responsive Documents

Aside from granting the motion to compel, the Magistrate committed legal error by requiring a search for responsive documents cover through September 4, and produced by September 15, despite appearing to recognize that September 4 was an arbitrary date picked by Plaintiffs' counsel.

Defendants, on the other hand, provided a reasoned basis that time should be limited to date of the Complaint or, at the latest, the date this Court first enjoined the Defendants from taking any further action to implement the Fund. These dates are reasonable cutoff dates because, as explained during the hearing, that is when Plaintiffs allege they suffered their harm by. Additionally, as Defendants have certified and stated under oath and in open court, no action was taken to implement the Fund.

Discovery must be conducted on a basis that is reasonable and proportionate to the needs of the case. Here, Plaintiffs have alleged that they were harmed by the execution of the Settlement Agreement and the May 18 Order. They assert that they had standing no later than May 22. And in any event, the Fund was enjoined on May 29, and Defendants have, since then certified and sworn that no further action has been taken. After that date, the volume of records created—because of media coverage, and docket activity in this and four other related cases—naturally

increased significantly but are irrelevant. The communications occurring after the Fund was enjoined are both not relevant to what happened during the brief moment in time that the Fund was potentially moving forward. They are privileged communications relating to defending this case or one of the other four related cases challenging the Anti-Weaponization Fund.

The Magistrate appeared to recognize this in pressing Plaintiffs' counsel on why September 4 was not an arbitrary cutoff:

> Give me some reason why today as a cutoff date or Monday as a cutoff date or four weeks ago as a cutoff date, what information you have that would suggest to this Court that it should choose one of those three dates? Which is more appropriate? You just seem like you just want the most amount of time."

Dkt. 165 at 10:4–:9.

Nevertheless, the Magistrate ordered a search through the arbitrary date of September 4. The Court reasoned that because there might be an email recounting the previous mindset of a decision maker before an injunction was entered and the Fund was abandoned, generated sometime—up to months—after the case was filed, the Department was obliged to search all emails related to the litigation and the Fund through September 4. But requiring this extended search because of the slim possibility that an email recounts a previous mindset is simply not proportional to the needs of the case, and in any event would almost certainly result in reviewing exclusively privileged information.

For their part, Plaintiffs' theory of the September 4 date is appropriate relies on an assumption that the Fund is somehow moving forward despite countless representations; under oath, in court filings, in open court, and in the media that the Fund has not moved forward. It also implies that—with no supporting evidence and in direct contradiction to Defendants' certification of compliance—that the Department has been secretly flouting the Court's injunction for the last three months and on the speculation that maybe the Attorney General will now rescind the

August 2 Rescinding Order—which itself withdrew the complained-of May 18 Order. Rampant speculation that assumed the falsity of sworn statements and representants of counsel to the court is not the basis for a fishing expedition to wrap up the privileged communications of Department of Justice lawyers and their agency clients.

The cutoff date should be—at the latest—May 29, when this Court first enjoined the Fund. The fact that the Department took steps that further show the Fund is not moving forward (by rescinding the order) does not support the idea that there are continued communications about what happened to set up the Fund—it was never set up. This has been repeated in Interrogatory answers, court filings, and more. Forcing the United States to search through months of emails looking for a hypothetical email that might describe what would have happened had the Fund moved forward—up to three and a half months after the fact—is forcing the government to search for a needle in the haystack, when there's likely no needle. That is not proportionate to the needs of the case; it is a sanctioned fishing expedition. Accordingly, if the Court orders any production, it should withdraw the order compelling searches past May 29, 2026.

**IV. Interrogatories**

For the reasons stated in Section I above, briefed in Defendants' papers opposing the Motion to Compel, and stated in its answers, no remaining formulation of Interrogatory 3 or Interrogatory 4 is answerable. Plaintiffs have tried to craft several re-formulations of them, but every formulation is either irrelevant or privileged. At their core, the Interrogatories seek a narrative of how Justice Department attorneys handled a different case in a different district. The Interrogatories go straight to the heart of Attorney Client Privilege, Attorney Work Product, and Deliberative Process Privilege; all in addition to being utterly irrelevant to any disputed fact or claim at issue *before this Court*. In the context of opposing counsel's statement to the media—that

Plaintiffs' counsel "will continue to meet the government in court until our investigation is complete"—one can see why Plaintiffs insist so mightily on an answer to these questions. But litigants in civil actions do not have general "investigatory" powers. They may, at best, "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The Magistrate even recognized that Plaintiffs' instance on who "conceived of" something was not relevant.

> Why it was structured the way it was structured seems extremely important. Still, then that's one question. Provide the names of the individuals who know why the fund was structured the way it was structured. That's separate and apart and different from who conceived of the fund. The Court can see how the former question and the answers in those names would be relevant. The Court is having more difficulty in determining or concluding why the latter would be relevant, that is the name of the people who just conceived rather than the people -- the names of the people who determine how the fund should be structured and who would benefit from it. That seems like a completely appropriate question. Who conceived of it seems less.

Dkt. 165 at 34:3–:16. But, instead denying the Motion to Compel on the formulation of the Interrogatories presented, and allowing Defendants answers to stand, the Magistrate granted the Motion and ordered Plaintiffs to propound what the Court concluded would be a relevant Interrogatory, the Magistrate allowed Plaintiffs to ask what amounts to an entirely new interrogatory compared to the one that has already been answered.

Accordingly the Court should withdraw the order compelling the answer to the further amended and reframed Interrogatories 3 and 4.

## CONCLUSION

For the reasons stated above, the Court should stop the Plaintiffs' "investigation" into the Department's handlining of another civil matter in a different jurisdiction. It should further hold

that the discovery requests are improper and reverse the Magistrate and DENY the Plaintiffs' motion to compel. Dkt. 143, 158.

Dated: September 11, 2026

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

*/s/ Andrew J. Block*
ANDREW J. BLOCK
*Senior Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

/s/ *Andrew J. Block*
Andrew Block