**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **Andrew Floyd**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**Department of Justice**, et al.,<br><br>Defendants. | **Case No. 26-cv-1399-LMB** |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE ORDER OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs respectfully oppose Defendants' Objections to the Order issued by the Honorable Magistrate Judge Ivan D. Davis. *See generally* Dkt. Nos. 168, 169.

**INTRODUCTION**

Despite this Court's orders expressly allowing discovery to proceed (Dkt. Nos. 95, 140), Defendants again ask the Court to "halt" discovery and assert that a federal litigant should be forced to resort to FOIA rather than the civil discovery process, Defs.' Obj. at 1-2, 7. But this Court has repeatedly made clear that discovery in this matter shall proceed—notwithstanding Defendants' pending motion to dismiss and the fact that some claims will be considered on an administrative record. Dkt. Nos. 95, 140. Nevertheless, more than halfway through the court-ordered discovery period and despite the Magistrate Judge's orders, Dkt. Nos. 154, 158, Defendants have yet to disclose who was involved in the unlawful actions at the center of this case or to produce a single document. These objections are just another attempt by Defendants to

disregard this Court's repeated discovery orders, shirk their discovery obligations, and delay the discovery process.

The Court should affirm the Magistrate Judge's decision and require Defendants to produce their overdue discovery responses. Given Defendants' extraordinary and unwarranted delay, Plaintiffs request the Court order interrogatory responses be produced no later than Monday, September 21, 2026, and that all responsive documents and privilege logs be produced no later than September 25, 2026. Plaintiffs have noticed 30(b)(6) depositions of the Department of Justice and the Department of Treasury for October 6 and 8, 2026, thus necessitating firm and immediate deadlines and prompt disclosure.

**BACKGROUND**

As this Court is well aware, this action concerns the results of a collusive "settlement agreement" whereby Defendants set up a $1.776 billion "Anti-Weaponization Fund" (the "Fund") exclusively to pay those claiming harm caused by Democrats and issued an Immunity Order granting President Trump, his family members, his businesses, and their affiliates a release from all investigations into their tax liability. This Court entered a preliminary injunction and ordered discovery to commence. Dkt. Nos. 85, 95. In conformance with this Court's order, on July 7, 2026, Plaintiffs served limited and targeted discovery requests: six interrogatories, five requests for admission, and seven requests for production. Dkt. No. 144-1 at 26-34 (Pls.' First Req. for Produc.); Dkt. No. 144-1 at 35-42 (Pls.' First Set of Interrogs.); Dkt. No. 144-1 at 43-49 (Pls.' First Reqs. for Admis.). Defendants, in turn, missed their July 22, 2026, deadline to object to Plaintiffs' requests, thus waiving any objection to the scope of the requests. *See* Local Civ. R. 26(C).

Nonetheless, in hopes of obtaining timely and full responses, Plaintiffs' counsel met and conferred with Defendants—repeatedly and at length—over the next several weeks, through a

1.25-hour videoconference on July 29, a 1-hour videoconference on August 17, and a short follow-up videoconference on August 20. Throughout these conferences, Defendants claimed, contrary to the targeted nature of Plaintiffs' requests, that responding to requests for communications about the conception, creation, operation, status, or plans for the Fund would require the search of the records of all 190,000 employees of the Departments of Justice and Treasury. Dkt. No. 144-1 at 7.

In response, Plaintiffs repeatedly made clear, beginning on July 29, that their document requests were targeted only to those involved in decisionmaking regarding the conception, creation, operation, status, or plans for the Fund, not every single employee of the two Departments. *Id.* But Defendants' counsel did not agree to any limitations to the requests, claiming a lack of authority to bind his clients. *Id.* at 6. Throughout these meet-and-confers, even after their responses were due, Defendants refused to engage in even the most basic discovery searches—not even of those individuals who had signed the settlement agreement and orders establishing the Fund. *Id.* at 15-17. Defendants instead insisted that Plaintiffs name individual custodians while simultaneously refusing to provide even initial disclosures identifying the individuals involved. *Id.*

Similarly, Defendants adamantly refused to respond to interrogatories asking for the names of individuals involved in the conception, creation, and operation of the Fund. Vaguely asserting generalized theories of potential privileges, Defendants claimed that public officials could not be identified in discovery responses, Dkt. No. 144-1 at 165-68, despite the fact that the identity of individuals involved in privileged communications is one of the most basic details that must be disclosed even when asserting a privilege.

In the face of this obstruction of the discovery process, Plaintiffs filed a motion to compel on August 21, 2026, Dkt. Nos. 143, 144, and the Magistrate Judge held a hearing on Friday, August 28, Dkt. No. 153. The Magistrate Judge directed the government to produce Initial Disclosures,

but otherwise directed the parties to meet and confer again to attempt to narrow disputes, Dkt. No. 154; Ex. 1 at 18:5-18, 28:14-29:7, which included Defendants' obligation to search for, produce, and log documents responsive to several Requests for Production (RFPs) and Defendants' obligation to provide complete answers to several Interrogatories.

On Saturday, August 29, Plaintiffs' counsel sent Defendants' counsel a letter setting forth their proposed clarification and narrowing of the outstanding discovery requests, in an effort to facilitate productive meet-and-confers during the following week. *See* Dkt. No. 156-1 (Plaintiffs' letter regarding outstanding discovery requests). Contrary to Defendants' assertion that Plaintiffs' letter was the "first time" that they "offer[ed] some narrowing constructions of the RFPs," Defs.' Obj. at 4, Plaintiffs in fact had offered the exact same narrowing constructions at the first meet and confer that took place exactly a month earlier on July 29, *see* Dkt. No. 156-1 at 3; Dkt. No. 144-1 at 7. Following the August 29 correspondence, the Parties met and conferred in good faith for about two hours over the course of three days. *See* Dkt. No. 156-2 (correspondence regarding meet and confers).

During an August 31 meet and confer, Plaintiffs asked Defendants at least to begin searches for responsive documents in the custody of the named Defendants, most of whom actually signed the settlement agreement and its related orders, and a high-level official whose involvement was discussed in the press, and if more names appeared through those searches, to search those as well. Dkt. No. 156-2 at 6. Defendants agreed to start with those custodians. *Id.* As to the substance of the RFPs, "Defendants agreed that, with [Plaintiffs'] clarifications, they understand the scope of materials Plaintiffs consider responsive to [RFPs 1, 2, and 3] and are able to craft a search for responsive documents." Dkt. No. 156 at 4. "The Parties [also] believe they have resolved all outstanding disagreements concerning the scope and relevance of [RFP 7]." *Id.* Defendants

continued to withhold complete answers to Interrogatories 3 and 4 on the basis of privilege. Dkt. No. 156-3 at 3-5.

Accordingly, as relevant here, three issues remained after those meet and confers with respect to Plaintiffs' discovery requests: First, the Parties disagreed as to the date range that Defendants should apply to their search for responsive records. Dkt. No. 156 at 5-7. Second, the Parties disagreed as to the deadline for Defendants to respond to RFPs and interrogatories. *Id.* at 7-8. And third, the Parties disagreed as to the sufficiency of Defendants' responses to Interrogatories 3 and 4. *Id.* at 8-9. The parties addressed these disagreements in a further hearing before the Magistrate Judge on September 4, Dkt. No. 157.

At the hearing, the Magistrate Judge agreed that Defendants' position was unreasonable. He granted Plaintiffs' motion to compel in part and ordered Defendants to search for responsive documents through September 4, 2026; respond to narrowed constructions of Interrogatories 3 and 4; and produce all responses, documents, and privilege logs within 11 days, by September 15, *see* Dkt. Nos. 158, 165. As the Magistrate Judge noted, that deadline gave Defendants more time to respond than he typically afforded parties to produce discovery responses following an order on a motion to compel. Ex. 2 at 7:4-18.

Instead of complying, Defendants filed the present objections.

## LEGAL STANDARD

A magistrate judge's non-dispositive ruling can be "modif[ied] or set aside" only when it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The deferential clear-error standard provides that factual portions of [a] magistrate judge's ruling may be set aside where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Harrison v. Shanahan*, No. 1:18-

cv-00561, 2019 WL 2216474, at *4 (E.D. Va. May 22, 2019) (emphasis added) (internal citations omitted). "Questions of law, on the other hand, are reviewed [on] the contrary-to-law standard . . . ." *Id.* But even under this standard, "decisions of a magistrate judge concerning discovery disputes . . . should be afforded great deference." *In re Outside Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010) (internal citations omitted). Indeed, another jurist in this District noted that "altering a magistrate [judge's] non-dispositive orders [is] extremely difficult to justify." *The Flexible Benefits Council v. Feltman*, No. 1:08-cv-371, 2008 WL 4572511, at *3 (E.D. Va. Oct. 8, 2008) (Cacheris, J.) (internal citations omitted).

## ARGUMENT

Because Defendants do not come close to demonstrating any clear error or ruling contrary to law in the Magistrate Judge's order, the order should be affirmed.

### I. Plaintiffs' Requests are directly relevant to this litigation, and Defendants waived any argument to the contrary.

Defendants' primary argument—that Plaintiffs' requests improperly seek information about another case, *Trump v. IRS*, Case No. 1:26-cv-20609 (S.D. Fla. Jan. 29, 2026)—has been expressly waived and is, in any event, baseless. Defs.' Obj. at 7.

At the outset, Defendants missed their deadline to assert any relevance objections to the Plaintiffs' discovery requests set forth in the Local Rules and thus waived any such objections. *Montoya v. Daisy Fresh Cleaning Co., Inc.*, No. 1:19-cv-1264, 2020 WL 6930513, at *1-2 (E.D. Va. Apr. 22, 2020) (compelling production of documents "without objection" where party missed the 15-day deadline under Local Civil Rule 26(C) because "[a] party's failure to submit timely

objections to discovery requests may constitute a waiver of any objection.").[1] On this basis alone, the Court should deny Defendants' relevance objections.

But even if this Court were to excuse this initial waiver, Defendants again waived any relevance objection by conceding it before the Magistrate Judge. As detailed *supra* at 4-5, Defendants represented in a joint filing on September 3 that they had resolved all disputes as to the subject matter of Plaintiffs' RFPs and Interrogatories, asserting that the only remaining substantive disputes were whether the RFPs should be limited to documents produced before this action was filed (despite ongoing factual developments since that date) and whether they could continue to refuse to withhold names and role descriptions in their answers to Interrogatories 3 and 4 based on amorphously identified privilege—not that the requests were irrelevant. Dkt. No. 156 at 3-4, 8-9.

In other words, although the relevance of Plaintiffs' requests was raised in Defendants' initial opposition to Plaintiffs' motion to compel, *see* Dkt. No. 149 at 8, 10-12, it was withdrawn through the subsequent meet and confer process, Dkt. No. 156 at 3-4. "A party who identifies an issue, and then explicitly withdraws it, has waived the issue." *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (quoting *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002)). And "when a claim is waived, it is not reviewable on appeal, even for plain error." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 731 (1993)); *see also JTH Tax, LLC v. Shahabuddin*, No. 21-2031, 2023 WL 3002746, at *10 (4th Cir. Apr. 19, 2023) ("[A] district court needn't consider new *issues* raised for the first time in objections, even if it must consider new *arguments* related

[1] *See also Certain Underwriters at Lloyds, Lond. v. Advanfort Co.*, No. 1:18-cv-1421, 2019 WL 3366103, at *5 (E.D. Va. July 25, 2019) (ruling that defendant waived all its objections as untimely made); *Galloway v. Martorello*, No. 3:19-cv-314, 2023 WL 5229231, at *12 (E.D. Va. Aug. 14, 2023) ("Local Civil Rule 26(C) requires discovery objections be 'served within fifteen (15) days after the service of the interrogatories, request, or application.' Defendants' objections were not timely. They are overruled for that reason alone.")

to existing issues.") (citing *Samples v. Ballard*, 860 F.3d 266, 271-273 (4th Cir. 2017) (emphasis in original)). On this basis too, the Court should reject Defendant's improperly revived relevance objections.

Even if this Court were to consider Defendants' waived argument (and it should not), Plaintiffs' requests are directly relevant to this litigation. As Defendants acknowledged in their earlier briefing, the sole factors courts consider in assessing whether settlement discussions are discoverable in a separate litigation are relevance and need. Dkt. No. 149 at 8, 10-12. And Defendants do not contest that the settlement discussions at issue in *Trump v. IRS* are, in fact, relevant and necessary here. *See id.*[2] Nor could they. Defendants themselves have consistently referred to the "settlement agreement" in *Trump v. IRS* as setting forth the bases for and terms of both the Anti-Weaponization Fund and the Immunity Order, which are the direct subjects of the present litigation. *See* Dkt. Nos. 123-1 (Settlement Agreement), 123-2 (Immunity Order), 123-3 (Funding Order), 123-5 (August 2 Document).

Defendants assert that the Magistrate Judge "assume[d] the relevance of anything related to the *Trump v. IRS* case," Defs.' Obj. at 7, but he did so because Defendants had conceded the point by representing that any dispute as to the substance of RFPs 1, 2, 3, and 7 besides timeframe

[2] The cases Defendants cited in their opposition to Plaintiffs' motion to compel reiterate this same point. *See* Dkt. No. 149 at 10-12 (citing *Wyeth v. Lupin Ltd.*, No. 1:07-cv-00632-WDQ, 2008 WL 11509482, at *3 (D. Md. Mar. 28, 2008) (suggesting that "a party seeking discovery of settlement documents must demonstrate a heightened showing of need and relevance to the action"); *CHS Inc. v. ABM Healthcare Support Servs., Inc.*, No. 7:19-cv-788, 2021 WL 149861, at *3 (W.D. Va. Jan. 15, 2021) (declining to compel production of documents related to ongoing settlement negotiations because requesting party "has not established that the entire negotiation and settlement process . . . is relevant"); *Coffey v. Hartford Life & Accident Ins. Co.*, 318 F.R.D. 320, 325 (W.D. Va. 2017) (limiting discovery request to portion of settlement discussions that was relevant to claims); *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, 2020 WL 6947921, at *3-4 (M.D.N.C. Sept. 29, 2020) ("[W]hen the disclosure of settlement negotiations is at issue, a particularized showing of relevance by the party seeking such documents is appropriate.")).

and privilege had been resolved, Dkt. No. 156 at 3-4. Now, despite that concession, Defendants ask this Court to decide the question in the first instance. But that is not a proper basis for objections. *JTH Tax, LLC*, 2023 WL 3002746 at *10. Having already agreed to search for responsive documents including those related to settlement of *Trump v. IRS*, and, having provided no argument besides their own disinclination, Defendants have failed to demonstrate this information should be excluded from Plaintiffs' requests.

## II. This Court should affirm the Magistrate Judge's 11-day deadline for Defendants to respond to Plaintiffs' requests.

The Magistrate Judge correctly required Defendants to respond to Plaintiffs' requests within 11 days of his order, generously affording them the maximum amount of time contemplated by the Local Rule 37(C). *See* Ex. 2 at 7:4-18. The crux of this dispute rests on Defendants' entirely novel theories that their obligation to search for documents does not begin until after an order compelling production and that every meet and confer begins their 30-day clock to respond anew. Defs.' Obj. at 7-8. Defendants cite no authority for this extraordinary position, nor are Plaintiffs aware of any that exists. Again, Defendants waived all objections to the scope of Plaintiffs' discovery requests by failing to lodge timely objections. *See, e.g.*, *Montoya*, 2020 WL 6930513, at *1-2. Moreover, the Magistrate Judge committed no "legal error" by simply following the deadline set forth in the Local Rules and requiring responses within 11 days of the order compelling responses. *Contra* Defs.' Obj. at 7-9.

First, Defendants' assertion that an order compelling responses was somehow not authorized because the ultimate order related to the timing of production after the parties narrowed disputes is unavailing. Defs.' Obj. at 7-8. The narrowing did not change the substance of the requests. Defendants refused to meaningfully meet and confer with Plaintiffs prior to the filing of the motion to compel, insisting their counsel of record lacked any authority to actually agree to

any narrowing of requests. *See* Dkt. No. 144-1 at 6. Plaintiffs repeatedly made clear—beginning on July 29—that their requests were limited to responsive documents in the custody of those making decisions regarding the Fund and offered explicit limiting language to that effect (to the extent it was not already obvious from the language of the requests themselves), but Defendants' counsel refused to agree to such a limitation, insisting he had no authority to come to any agreements at all. *See id.* The Court had to order Defendants to meet and confer again to narrow disputes. Ex. 1 at 18:5-18, 28:14-29:7. And Plaintiffs then reiterated the requests were limited to those making decisions regarding the Fund, suggesting Defendants begin their search as any reasonable attorney would start any document search—by starting with the four named Defendants and one additional individual, who was publicly reported (and alleged in our complaint) to have played a central role in the creation of the Fund, *see* Dkt. No. 123 at 11-12, and then expanding as that search identified additional custodians. Dkt. No. 156-2 at 6. This was not some novel construction of the requests; it was the most obvious way to commence a search for documents responsive to the requests. Defendants' construction of Plaintiffs' requests as implicating 190,000 employees did not absolve them of the responsibility to begin searching for responsive records of the five most obvious custodians once discovery began and requests were served. The ultimate narrowing to these five custodians certainly cannot be considered a new request that could start the original 30-day deadline to respond anew.

Furthermore, Defendants' theory that a court can only compel discovery responses if the parties have not agreed to any narrowing of requests, Defs.' Obj. at 7-8, flies in the face of the requirement that parties meet and confer. *See* Fed. R. Civ. P. 37(a)(1). Indeed, courts in this district will not even entertain a motion to compel unless the parties have meaningfully met and conferred with the specific purpose of narrowing disputes. *See* Local R. 37(E); Dkt. No. 114 at ¶ 10(b).

Precluding any order compelling responses if those mandatory conferences have any partial success would vitiate the meet-and-confer requirement.

Second, even after the parties agreed that Defendants would begin their search with the most obvious custodians, Defendants would not commit to any deadline for their responses—not even the 30 days Defendants seek here. Dkt. No. 156-2 at 3; Defs.' Obj. at 8. Instead, Defendants refused even to say when they could provide a date by which they might produce documents, and were unable to articulate any basis for delay. Ex. 2 at 8:1-13. Thus, a dispute between the parties still remained live at the time of the conference, and the Court resolved that dispute in an eminently reasonable manner—by compelling production by the deadline set forth in Local Rule 37(C). Defendants simply cannot demonstrate that the Magistrate Judge's order following the very letter of the local rule is "clear error of law," and their objections thus should be denied.

Finally, Defendants' assertion that they should not be subject to this Court's standard timeframe for compelled discovery responses because they did not engage in bad faith is unavailing. Defs.' Obj. at 8-9. At the outset, Defendants refused to meet-and-confer with actual authority to come to agreement until after full briefing on the motion to compel, Dkt. No. 144-1 at 6, and still have not produced even a single document. But regardless, there is no requirement of bad faith in Local Rule 37(C)'s compelled discovery deadline. It is the standard deadline for all parties who simply disagreed and required court intervention to resolve the dispute. Local Civ. R. 37(C). Because Defendants have now blown through that deadline as well, and because Plaintiffs' scheduled depositions are quickly approaching (currently set for October 6 and 8), the Court should require production of documents no later than September 25.

## III. This Court should affirm the Magistrate Judge's date range for a search of documents responsive to Plaintiffs' first set of requests for production.

The facts underpinning Plaintiffs' claims have continued to evolve during the pendency of this litigation, including most publicly through the Department of Justice's issuance of an August 2, 2026, Order regarding the Fund and statement regarding the Immunity Order—more than two months after this case began. How Defendants are effectuating the Fund and the Immunity Order during the pendency of this litigation is central to Plaintiffs' claims. Plaintiffs thus must be able to obtain documents and information after the filing of this action. In a showing of good faith and compromise, Plaintiffs offered to set the deadline at September 4, 2026 (the date of the Magistrate Judge's order compelling responses), and the Magistrate Judge agreed to this compromise. Defendants' attempts to artificially limit the scope of discovery to documents produced before the original Complaint was filed lacks any basis in law or fact.

There is nothing unreasonable or disproportionate about searching for and producing documents created after the filing of this action. Defendants do not dispute that critical facts developed after this lawsuit's commencement and indeed have relied on those facts themselves. For example, on August 2, 2026, Attorney General Blanche issued a new Order purporting to rescind the May 18 Order establishing the Anti-Weaponization Fund, Dkt. No. 123-5, which Defendants have since invoked in support of their argument that this lawsuit is moot. *See* Dkt. No. 147 at 8. But Plaintiffs have alleged that this purported rescission is non-binding, that Defendants retain the ability to resurrect the Fund "at any time," and that Defendants have refused to commit that the Fund will not proceed "in any manner or under any name." Dkt. No. 123 ¶¶ 68-71, 78. Discovery into Defendants' conduct since the Fund's purported rescission is therefore squarely relevant to testing Defendants' mootness argument not only at the motion to dismiss stage, but,

because jurisdiction must exist throughout the pendency of the case, also through summary judgment and/or trial.

Similarly, as to the Immunity Order, Plaintiffs have alleged that one or more of President Trump's tax returns, and returns of the other individuals and entities covered by the Order, are presently under audit, *id.* ¶¶ 173-174, and that the Immunity Order requires IRS employees to terminate those audits going forward, *id.* ¶¶ 135, 176. Whether and how Defendants have acted on that obligation after the Immunity Order, including after this suit was filed is directly at issue and cannot be tested without documents postdating the filing date. Plaintiffs must be able to take full discovery into these ongoing developments.

Moreover, the Federal Rules of Civil Procedure expressly contemplate continued search for and production of documents after the filing of an action. Defendants have ongoing discovery obligations because facts continue to develop during the pendency of a lawsuit. The Magistrate Judge appropriately required a search for responsive documents through September 4, 2026 (*see* Fed. R. Civ. P. 26(e)(1)) because at least one significant document was issued on August 2, well after the filing of the initial complaint, and there could very well be other such documents issued even after that date, and Defendants had not demonstrated that a longer search period would present a burden to them, so September 4 was a "reasonable" date to end a search. *See* Ex. 2 at 18:5-23:9.

## IV. This Court should affirm the Magistrate Judge's Order compelling responses to Interrogatories 3 and 4.

Defendants' arguments as to the Magistrate Judge's Order on Interrogatories 3 and 4 are also unavailing. These interrogatories simply ask Defendants to identify the individuals involved in the conception of the Fund and the relevant portions of the Agreement establishing the Fund and the Immunity Order, and to describe their roles. During the meet-and-confer process,

Defendants confirmed that they understood the limited nature of these requests, Dkt. No. 156-2 at 5, maintaining that they were refusing to provide complete answers solely on the basis of privilege, Dkt. No. 156-3 at 3-5. The Magistrate Judge further narrowed the scope of the Interrogatories by focusing on the "structure" of the Fund, as opposed to the Fund in its entirety. Ex. 2 at 36:3-15; 37:12-18.

Defendants cite no valid excuse for their continued refusal to answer these Interrogatories, as narrowed by the Magistrate Judge. As explained *supra* at 6-9, although Defendants now claim these interrogatories are irrelevant, Defs.' Obj. at 11, Defendants have waived any argument as to relevance with respect to these requests. Furthermore, these interrogatories are clearly relevant to identifying potential custodians and deponents who possess information relevant to Plaintiffs' claims. And there is no valid privilege basis to withhold the information requested. The mere name of an individual—even if an attorney—is never privileged, nor is identification of their role. Defendants have failed to provide any explanation of how the mere identity of personnel could ever be privileged. *Cf., e.g.*, *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) ("a client's identity is privileged only if disclosure would in essence reveal a confidential communication."); *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (setting forth requirements for asserting attorney-client privilege, including proving that communication was made by a lawyer who is a member of the bar of a court); *Puckett v. Ocwen Loan Servicing, LLC*, No. 5:16-CV-05909, 2016 WL 6828609, at *4, *7 (S.D.W. Va. Nov. 17, 2016) (finding that attorney names, email addresses, and law firm names did not "contain[] any privileged communication or attorney work product"); *Deering Milliken Rsch. Corp. v. Tex-Elastic Corp.*, 320 F. Supp. 806, 809-10 (D.S.C. 1970) ("[D]efendants are entitled, without invading the attorney-client privilege, to secure

sufficient identification of the material to support a motion to produce."). Indeed, the government's arguments border on frivolous.

This Court should order Defendants to respond to these interrogatories in full, including by identifying whether any information was withheld on the basis of privilege and, if so, what privilege.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in Plaintiffs' briefing in support of the motion for compel, Dkt. Nos. 144, 150, and the Magistrate Judge's Order, Dkt. No. 158, Ex. 2, Plaintiffs respectfully request that Defendants' Objection be overruled and that the Magistrate Judge's Order be affirmed. Further, given Defendants' extraordinary and unwarranted delay, Plaintiffs request the Court order interrogatory responses be produced no later than Monday, September 21, 2026, and that all responsive documents and privilege logs be produced no later than September 25, 2026.

September 16, 2026

Respectfully submitted,

/s/ *Catherine M.A. Carroll*
Catherine M.A. Carroll (Va. Bar No. 50939)
Joel McElvain (Va. Bar No. 95215)
Pooja A. Boisture*
Jyoti Jasrasaria*
Aman George*
Lisa Newman* ^
Cynthia Liao*
Ayesha Khan*
Robin F. Thurston*
Skye L. Perryman*
ccarroll@democracyforward.org
jmcelvain@democracyforward.org
pboisture@democracyforward.org
jjasrasaria@democracyforward.org
ageorge@democracyforward.org
lnewman@democracyforward.org
cliao@democracyforward.org
akhan@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

*Counsel for Plaintiffs*

* Admitted *pro hac vice*

^ Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the District of Columbia Bar.

Paras N. Shah*
General Counsel
NATIONAL TREASURY EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5500
paras.shah@nteu.org

*Counsel for NTEU*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September, 2026, I will cause the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, thereby serving all counsel who have appeared in this case.

*/s/ Catherine M.A. Carroll*
Catherine M.A. Carroll (Va. Bar No. 50939)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ccarroll@democracyforward.org

*Counsel for Plaintiffs*