**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
ALEXANDRIA DIVISION

| | |
|---|---|
| **Andrew Floyd, et al.**,<br>Plaintiffs,<br><br>v.<br><br>**Department of Justice, et al.**,<br>Defendants. | Case No. 1:26-cv-01399-LMB |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR OBJECTIONS FROM THE MAGISTRATE JUDGE'S ORDER ON A NONDISPOSITIVE MATTER**

## Introduction

This is not a motion to stay discovery. This is a motion about the proper scope of discovery. When the Court denied the Defendants' motion to stay discovery, Defendants did not forfeit their rights to challenge Plaintiffs' improper requests. Plaintiffs seek to frame this motion over the propriety of the discovery process moving forward to distract the Court from their utter abuse of that process.

While it is true the discovery process has proceeded over Defendants' objections; that does not give Plaintiffs free reign to seek documents outside the scope of what the rules allow. Defendants objected to the process by filing their motion. The Court denied it. And Defendants have abided by the Court's decision. They have produced an Administrative Record, answered all the Requests for Admission, and answered the Interrogatories. Disputes remain relating the Requests for Production, but even there, Defendants have answered where no documents exist and searched for documents *after* Plaintiffs reasonably articulated the documents sought.

Plaintiffs' brief only further underscores the United States' arguments that Plaintiffs are attempting to conduct a general oversight "investigation"—as if they have some plenary investigative authority—into the day-to-day of the Executive Branch. Specifically, they seek an

accounting of how the Department of Justice and a defendant agency handled a different civil matter in a different court in a different state. But Plaintiffs do not have such authority. They are bound by the Federal Rules of Civil Procedure which provide, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And all of Plaintiffs requests—at issue here and in the pipeline—go directly to how a different case was handled.

It also bears noting that Plaintiffs have been provided both an Administrative Record and the ability to propound discovery requests—including 20 Requests for Admission, 20 Requests for Production, and 18 Interrogatories—despite the fact that all of the complained of actions arise out of what Plaintiffs themselves categorize as "final agency actions." *See Brandon v. Nat'l Credit Union Ass'n*, 115 F. Supp. 3d 678, 684 (E.D. Va. 2015) ("In the normal course of an APA case, there is no need for discovery because judicial review of agency action is confined to the administrative record of the proceedings before the agency. Supplementation of the administrative record in an APA case is appropriate only in very limited circumstances.").

Instead of using their 58 requests to seek targeted information to support facts, that they should have had a good faith basis for alleging in the first instance, Plaintiffs have used their requests to conduct a broad sweeping inquiry into the behind-the-scenes of how a different civil action was litigated. And the rejoinder that they need discovery to know what facts or evidence might be used against them is of no value—Defendants do not intend to put on any affirmative evidence or witnesses (beyond that presented in the Administrative Record). Defendants arguments are purely legal and can be made on the papers.

And Plaintiffs' representation that they need documents urgently for their noticed Rule 30(b)(6) depositions is almost laughable. First, those depositions were originally noticed for

September 14 and 16, respectively. And when the Plaintiffs noticed the depositions (prior to any consult with counsel for defense out compliance with the rules), the motion to compel was pending and they could not have known what the outcome would be—but they noticed them anyway. Second, Defendants have objected to both depositions and the parties have agreed to brief the issue on the Court's two-week motion schedule; so the Defendants' motion for a protective order relating to these notices is forthcoming.

At bottom, Plaintiffs here recognize no limit on the discovery process. Under their framework, bystander to Civil Action A can now file a new lawsuit, Civil Acton B to challenge the settlement in Civil Action A. And not only that, but based on "allegations" and "information and belief" that bystander can now use Civil Action B to obtain the privileged and confidential communications, deliberations, and work product of the attorneys and parties in Civil Action A, an action to which the bystander was not a party. Attorneys across the country—from U.S. Attorneys Offices to private sector firms representing parties in litigation—would be quite surprised to learn that their settlement communications are: 1) now discoverable; 2) in actions brought in different jurisdictions; 3) by parties foreign to the civil action they are litigating. Yet that is the standard Plaintiffs seek to set with the requests at issue here (and also the requests pending in this litigation that have not yet made it to briefing).

**Argument**

Plaintiffs' memorandum largely misses the point so Defendants offer the following short points in response.

*First*. Plaintiffs' selective quotation of the word "halt" on page one is objectively misleading. The Defendants' motion asks the Court to "halt all *this* unnecessary and irrelevant discovery." In the context of the motion, this obviously applies to the two Interrogatories and three

requests for production at issue. It is not, as Plaintiffs' suggest a backdoor motion to stay the discovery process writ large.

*Second*. Plaintiffs complain "Defendants have yet to disclose who was involved in the … actions at the center of this case." Again, not true. Plaintiffs are in possession of verified Interrogatory answers that state the individuals who signed and issued the documents they complain of. Plaintiffs' real complaint is that Defendants have not identified every person who participated in the deliberative process or provided advice on a different case. As to that, Plaintiffs have asserted privilege, including the deliberative process privilege which can protect the identity of counselors and advisors participating in pre-decisional and deliberative discussions—which can also be simultaneously protected by the attorney-client privilege. *See, e.g., Pub. Citizen, Inc. v. U.S. Dep't of Educ.*, 388 F. Supp. 3d 29, 44 (D.D.C. 2019) (the identity of attorneys may be appropriately withheld under the deliberative process privilege (and attorney client privilege) because releasing name would reveal information about the decision-making process); *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (finding that "if these agency records are indeed deliberative, it is appropriate to apply [redactions] to the documents themselves, as well as to the names of their authors.").

*Third*. Plaintiffs continue to push the false pretext that "Defendants' counsel did not agree to any limitation." Opp. at 3. The audacity of that statement is shocking since the requests were propounded by the Plaintiffs. To say that Defendants did not agree to something implies that there was an offer that could be agreed to. Rather, as Plaintiffs framing implicitly admits, they propounded extensively broad document requests—that Defendants noted would have wrapped in nearly 190,000 federal workers—and then attempted to shift the burden to Defendants to go find the documents Plaintiffs are interested in. Defendants' point all along has been that until the

Plaintiffs offered some sort of custodial limitation, the requests did not comport with the requirements of Fed. R. Civ. P. 34(b)(1) which states that document requests must "describe with reasonable particularity each item or category of items to be inspected." The day the documents requests did that, the Defendants began the process of searching for responsive documents.

*Fourth*. As to Plaintiffs' arguments on relevance and waiver of RFPs, they are incorrect on both counts. As just described, the first focus of the objections was the exceedingly broad scope. But relevance was the first issue briefed in the United States' memo in opposition to the motion to compel. Dkt. 149 at 8-10. And it was the first issue briefed in this motion. Dkt. 169 at 7. Just because Defendants agreed that the request had been narrowed to a point where a search could be conducted does not mean they consented or assented to the relevance of the documents. And when Defendants agreed that "The Parties have resolved all outstanding disagreements concerning the scope and relevance *of this request*" they did so with respect to specific requests. Relevant here, the parties agreed that Interrogatory 5 and RFP 7 would largely be covered by the response to Requests 1–3. It is clear that there was an agreement to defer on those because Plaintiffs included language reserving the right to contest answers in the future. But there is no indication that Defendants forewent their primary objections by agreeing to take steps to identify documents while briefing their obligation to have to produce such documents.

And as to the merits of the relevance—this is clearly an attempt to collaterally attack an outcome in a different case Plaintiffs disagree with. As to the timeliness of the original objections, that issue was addressed in Defendants original brief, *see* Dkt. 149 at 6–7, but as soon as the inadvertent two-day lapse was recognized, it was remedied by defense counsel.

*Fifth*. As discussed above and in the Defendants' prior brief, it was legal error to grant the motion to compel when Plaintiffs had refused to limit the document requests in any way, and

immediately upon their limitation of the requests (which Defendants still disagreed with in some ways), Defendants nevertheless fulfilled their obligations and began searching for responsive documents. This also directly and definitively undercuts Plaintiffs' suggestions that Defendants are refusing to engage in the process or follow the Court's prior orders.

*Sixth*. As to the time frame of the search for documents, Plaintiffs argument that because the Attorney General rescinded the Complained-of Order on August 2, that there then must be documents responsive to implementing the Order during that time, in violation of this Court's injunction, is entirely backwards. Aside from the fact that the August 2 Order gives Plaintiffs all the relief they could have sought to begin with, it is the one action that the Defendants could have taken that was complaint with the Court's injunction because it withdrew any basis for any further action to implement the Fund.

*Seventh*. The interrogatories have been answered. Plaintiffs' obsession with who conceived of ideas or strategies is privileged and irrelevant. To the extent the Defendants answers have changed or their reasoning or objections have shifted, that is because Plaintiffs interpretation of what the Interrogatory means has been constantly evolving. And it further demonstrates that regardless of the formulation, Plaintiffs run into a relevance or privilege problem, or both.

**Conclusion**

For the reasons stated above, the Court should rule that the discovery requests are improper and reverse the Magistrate and DENY the Plaintiffs' motion to compel. Dkt. 143, 158.

Dated: September 17, 2026

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

*/s/ Andrew J. Block*
ANDREW J. BLOCK

*Senior Counsel to the Associate Attorney General*
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

/s/ *Andrew J. Block*
Andrew Block